# John P. D. Crist

## V.

# Metropolitan Mortgage Fund, Inc.

Record No. 822060

April 25, 1986

Present: All the Justices

*Wyatt B. Durrette, Jr. (Michael C. Montavon; Joyce A. Naumann; Roeder, Durrette and Davenport, P.C.*, on briefs), for appellant.
*H. Bradley Evans, Jr. (Thomas & Fiske, P.C.*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

John P. D. Crist, one of two partners in Viking Construction Co. (Viking), maintained this action to recover compensatory and punitive damages, attorney's fees, and costs from Metropolitan Mortgage Fund, Inc. (Metropolitan), for an alleged breach of an assumption agreement.* Although Crist sought alternative relief from certain individual defendants, the action was tried only on the counts alleging breach of contract and anticipatory breach of contract by Metropolitan.

The trial court, sitting without a jury, first ruled that there had been a breach of contract but no proof of damages; accordingly, it entered judgment for Metropolitan. Subsequently, however, the court granted Crist's motion to reconsider the question of damages and entered judgment for him in the sum of $100 as nominal damages. On appeal, Crist contends that the trial court erred in not awarding him compensatory damages.

The facts, most of which were stipulated, are undisputed. On November 15, 1971, Viking entered into a contract with a land-owner to purchase a tract of 33 acres in Fairfax County. By assumption agreement dated May 26, 1972, Viking assigned its right, title, and interest in the property to Metropolitan. There was then pending a rezoning application for the land. The assumption agreement contained these pertinent provisions:

> 4. Metropolitan will attempt to rezone all or a portion of the property to a use permitting a higher residential density than currently allowed under present zoning. Metropolitan will make this attempt at a time it deems proper. If Metropolitan is successful in obtaining a higher residential density for all or a portion of the property, Viking's interest in additional consideration will vest in the amount of $250.00 for each and every dwelling unit for which site plan approval is

---

* Crist's partner, R. F. Crist, III, was initially a plaintiff as well, but his claim was settled and Crist was the only remaining plaintiff at the time of trial.

subsequently obtained from the appropriate governing agencies of Fairfax County. In the event Metropolitan sells the subject property after obtaining the said rezoning, Metropolitan warrants that it will pay Viking $250.00 for each and every unit for which site plan approval is obtained within ten (10) days of the purchaser's obtaining said approval. If Metropolitan develops the property itself, or contributes the property to a joint venture or partnership to which it is a party, Metropolitan agrees to pay Viking $250.00 for each and every dwelling unit for which site plan approval is obtained within ten (10) days of said approval.

5.  If Metropolitan determines that a higher residential density is not an appropriate use for the property, or if a rezoning application filed for such a use is denied and Metropolitan decides not to hold the property until a second application for a similar use can be filed and action thereon obtained, Metropolitan may file a rezoning application for an industrial use. If such an application is approved, Metropolitan agrees to pay Viking $50,000.00 within one (1) year of the approval of said zoning.

6.  Nothing herein contained should be construed to imply that Metropolitan must file any rezoning application within any period of time.

Metropolitan paid Viking $263,116.80 for the property. During its ownership, Metropolitan, on the advice of zoning counsel, did not file any application for rezoning nor did it pursue the pending rezoning application.

Metropolitan was a wholly owned subsidiary of The Fitton Company, of whose common stock R. Marshall Fitton and Robert A. Fitton each owned 50%. The Fitton Company, after negotiations which began in October of 1971, agreed to a voluntary merger with Dominion Bankshares Corporation by contract dated August 30, 1972. As a condition of approving the merger, the Federal Reserve Board required Metropolitan to divest itself of the property.

By deed dated June 15, 1973, Metropolitan conveyed title to the property to Pohick Associates, a limited partnership, a 50% interest in which was owned collectively by R. Marshall Fitton, Robert A. Fitton, and George E. Travers (executive vice-president, president, and secretary, respectively, of Metropolitan).

Pohick Associates paid $277,768.12 for the property, which had been appraised at a fair market value of $273,000. Represented by the same zoning counsel who had earlier advised Metropolitan not to apply for rezoning, Pohick Associates submitted in 1976 a revised proffer of conditions together with its application requesting rezoning of the property to a density allowing 225 dwelling units. Pursuant to this application, the property was rezoned to a higher density residential district on August 2, 1976. On July 20, 1982, a site plan was approved providing for construction of 86 residential units on a part of the property.

At trial, Crist presented as an expert witness a civil engineer who testified that in his opinion under the applicable rezoning it was feasible to develop the 225 dwelling units shown on the approved preliminary plan for the property. Crist contended below, as he contends before us, that Metropolitan was liable for damages in the sum of $250 for each of the 225 dwelling units or, at a minimum, $250 for each of the 86 units shown on the site plan approved at the time of trial.

Acknowledging that the fate of zoning applications is usually unpredictable, Crist says that in this case there was predictability because of the identity of principals. According to Crist, the same principals who initially decided not to apply for rezoning later decided to apply; at each juncture they were represented by the same counsel. If Metropolitan had retained the property, the argument continues, with the same principals involved, the same decision to apply for rezoning would have been made in 1976 with the same favorable result. Therefore, damages from failure to apply are measurable. We do not agree.

■ Crist concedes that if Metropolitan had made application for rezoning and the application had been refused there would have been no proof of damages. In oral argument, he also acknowledged that there probably would have been no damages if Metropolitan had sold the land to a stranger who employed a different zoning attorney. We agree that the contractual obligation of Metropolitan was to apply for rezoning at such time as it deemed advisable. On the advice of counsel, it did not apply before conveying the property to Pohick Associates. Failing to apply for rezoning during its ownership of the land constituted, in the view of the trial court, a breach of contract. As no assignment of cross-error was made, this ruling became final and binding on us.

Sale of the property, however, was triggered by a requirement of the Federal Reserve Board. The Fitton Company could not participate in a proposed merger while Metropolitan, its wholly owned subsidiary, owned the property. The sale to Pohick Associates, which was not a wholly owned subsidiary, satisfied the divestiture requirement. Although the dominant principals may be the same in Metropolitan and Pohick Associates, there is no identity of ownership. The two Fittons owned 100% of Metropolitan, but together with another partner they owned only 50% of Pohick Associates.

■ Relying on *United Virginia Bank* v. *Ford*, 215 Va. 373, 210 S.E.2d 158 (1974), Crist argues that he is entitled to be made whole, as if the contract had been fulfilled by Metropolitan. The trial court rejected this argument, declining to equate failure to attempt to rezone with a successful attempt.

Crist's reliance on *Ford* is misplaced. In that case, a bank made a loan to be secured by a lien on the title to an automobile. The car dealer, in breach of contract, failed to record the lien on the title application. In the bank's action against the dealer, the trial court entered summary judgment in favor of the dealer because the bank could not prove the value of the vehicle, then missing, at the time of default. *Id.* at 373-74, 210 S.E.2d at 159-60. We reversed and entered final judgment for the bank for damages in the amount of the obligation that should have been secured less the amounts paid to the bank after the dealer's failure to perfect the lien. *Id.* at 376, 210 S.E.2d at 161. The contractual breach was failure to secure the bank. In the present case, the breach was failure to make an attempt to obtain a desired result.

Crist asserts that the sale by Metropolitan constituted the breach of contract. Conceding that at that time no damages could be established, he contends that two and one-half years later, when the desired rezoning was obtained, damages could be proved with precision.

■ The assumption agreement provided for numerous contingencies. It did not prohibit sale of the land by Metropolitan. It did not provide for liquidated damages in the event of breach; it did not require an attempt to rezone within any specified time; it did not even require that Metropolitan exercise reasonable diligence in seeking the rezoning. The agreement, therefore, was silent on the crucial question now presented: what damages are recoverable

upon a breach of the contract to apply for rezoning. We cannot rewrite the contract; we can only construe it as written.

Crist does not seriously contend that the rezoning could have been obtained before Metropolitan sold to Pohick Associates. Indeed, he did not present any evidence, expert or otherwise, to this effect. He merely insists that Metropolitan could have fulfilled its contract in 1976 by retaining title to the land and applying for rezoning in its own name with approval a virtual certainty.

■ The trial court, which was sympathetic to Crist's position, found that he had proved no compensatory damages. We cannot say as a matter of law that this finding is incorrect. There is no certainty that, without the sale to Pohick Associates and the attendant change in the identity of the principal owners of the property, Metropolitan would have applied for rezoning in 1976. Nor is there certainty that an application, if made then or at a later time by Metropolitan, would have been granted. The existence of damages in this case depended on Metropolitan's successful completion of an attempt to obtain higher density zoning; hence, damages for failing to make this attempt are contingent, speculative, and uncertain. Because damages, if any, cannot be established with reasonable certainty, no actual damages can be recovered. *duPont Co.* v. *Universal Moulded Prod.*, 191 Va. 525, 573, 62 S.E.2d 233, 255 (1950); *see Carr* v. *Citizens Bank & Trust*, 228 Va. 644, 651-52, 325 S.E.2d 86, 90 (1985) (suit on injunction bond); *Barnes* v. *Quarries, Inc.*, 204 Va. 414, 418-19, 132 S.E.2d 395, 397-98 (1963) (nuisance action). Accordingly, we will affirm the judgment of the trial court denying compensatory damages but awarding nominal damages of $100.

*Affirmed.*

STEPHENSON, J., dissenting.

The trial court ruled that Metropolitan breached the agreement. Because this ruling is not challenged on appeal, it became the law of this case. Therefore, the sole issue on appeal is whether, as a matter of law, Crist proved compensatory damages with reasonable certainty. I conclude that he did.

The parties' agreement provided: "Metropolitan agrees to pay Viking $250.00 for each and every dwelling unit for which site plan approval is obtained." Thereafter, the land was rezoned, and a site plan was approved for 86 units. Thus, the evidence estab-

lished, as a matter of law, that Crist was entitled to recover a judgment for at least $21,500 ($250 x 86 units).**

A reading of the majority opinion indicates to me that the majority refuses to accept the trial court's unchallenged ruling that a breach occurred. Accordingly, I respectfully dissent.

---

** Uncontradicted expert testimony introduced at trial established that site-plan approval could have been obtained for the development of 225 units. Although the fact finder reasonably could have calculated the damages on the basis of 225 units, it was not bound to award damages based on more than 86 units.