Present: All the Justices

SUNRISE CONTINUING CARE, LLC

OPINION BY
v.    Record No. 072501        JUSTICE LEROY F. MILLETTE, JR.
                                    January 16, 2009
JAMES F. WRIGHT, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert W. Wooldridge, Jr., Judge

In this appeal, we consider whether the trial court erred in allowing a jury to calculate damages arising from an alleged breach of a continuing care services contract when the plaintiffs' claims for rescission of the contract and for fraud were dismissed, and the plaintiffs presented no evidence of compensatory damages in support of their sole remaining claim for breach of contract.

### BACKGROUND

On November 13, 2003, Colonel James F. Wright, Jr., then age 82, and wife Marion C. Wright, then age 76 (collectively, the Wrights), moved into apartment 404 at The Fairfax, a continuing care facility for retired military officers owned by Sunrise Continuing Care, LLC (Sunrise).  Three weeks later, the Wrights experienced the first in a series of roof leaks that persisted for several years.  The existence of recurrent roof leaks in apartment 404 is uncontested.  Almost three years after they moved in and while they continued to live at The Fairfax, the Wrights filed a three-count complaint against

Sunrise, consisting of count I – rescission, count II – fraud, and count III – breach of contract.[*]

The contract the Wrights alleged had been breached by Sunrise was a continuing care agreement that set out the terms of the Wrights' residence at The Fairfax and the parties' respective obligations. Although the Wrights were offered options including a 50 percent refundable or 95 percent refundable contract, they chose a non-refundable contract. The Wrights paid a non-refundable entrance fee of $204,084.00. Under the agreement, the Wrights were also required to pay a monthly fee as additional consideration for medical and non-medical services provided to the residents at The Fairfax. These services included 24-hour security, a daily main meal, weekly housekeeping service, scheduled transportation, 24-hour nurse on duty, an assisted living and skilled nursing care facility, a wellness clinic, an emergency call system, concierge service, scheduled recreational programs, full-time administrative staff, maintenance of residence and community grounds, and utilities. A wide array of amenities was also offered, including fine dining and monthly wine tasting events. Additionally, in exchange for the entrance fee and continued

_____

[*] Counts I and II were dismissed at trial and are not at issue in this appeal.

payment of the monthly fees, the Wrights were entitled to live at The Fairfax for the rest of their lives.

Colonel Wright testified that apartment 404 was represented to Mrs. Wright and him as "[t]he best available, high class, first class."  The Wrights expected to receive "[a]n apartment that was like new and one that [they] could live in safely and keep [their] furniture in, and go off if [they] wanted to, lock the door and go away for a week or so, without having [their] apartment on [their] mind."  They anticipated "peace, quiet, no need to do the chores that go with owning a house, and camaraderie of other people [at The Fairfax and] social events that people with the same background would enjoy sharing with each other."

The Wrights contended that apartment 404 was less than "first class" due to the roof leaks and, therefore, Sunrise materially breached the agreement.  Colonel Wright testified regarding damages:

> [W]e had to spend a lot of our time in the apartment instead of doing the things that we wanted to do, and we felt as though we were a hostage to a faulty apartment.  We couldn't go out to do the things we liked to do, and simply shopping and things like that where you — depending upon the weather, we'd decide that one of us had better stop and stay in the apartment. And it was three, going on four, years of the worst years of our retirement.

As damages for breach of contract, the Wrights claimed $382,535.93, representing their payment of the $204,084.00 entrance fee plus monthly fees paid up to the date of the trial amounting to $178,451.93.

A jury trial was held, while the Wrights continued to live at The Fairfax. After the Wrights completed the presentation of their evidence, Sunrise moved to strike the evidence and for entry of judgment in its favor. Sunrise argued that although the Wrights had the burden to prove damages, they "put on no evidence to demonstrate anything other than full reimbursement." Sunrise further argued that rescission was an inappropriate remedy because rescission requires extraordinary circumstances in which the entire purpose of the contract between the parties is defeated. Sunrise analogized the extraordinary circumstances required for rescission of the contract with constructive eviction in a landlord/tenant case. In addition, Sunrise contended it had taken extraordinary measures to repair the leaks.

Arguing against Sunrise's motion to strike, the Wrights asserted that the series of leaks constituted a material breach of the contract and they were therefore entitled to rescission to be returned to the "status quo" and to reimbursement of, at a minimum, the entrance fee. In addition, the Wrights sought compensation for the amount the monthly fee was "devalued" by

4

the alleged breach.  The Wrights conceded, however, that "at this point in the case, the only thing that's been proven was what [the Wrights have] paid in" and, having presented their case-in-chief, that they had not put on any evidence of compensatory damages.  The Wrights argued, "we are entitled to our money back because of a material breach of the contract," and if Sunrise sought restitution for the services it provided to the Wrights, "the burden shifts to [Sunrise]" as "to any kind of quantum meruit that [it] can prove."

The trial court granted Sunrise's motion to strike the rescission and fraud claims, but took the motion to strike the breach of contract claim under advisement.  Sunrise presented its case, after which Sunrise renewed its motion to strike the breach of contract claim.  The trial court continued to take the motion to strike the breach of contract claim under advisement.  At the conclusion of the Wrights' rebuttal evidence, Sunrise renewed its motion to strike for a second time, which was again taken under advisement.  The case was submitted to the jury on the Wrights' breach of contract claim.

The jury returned a verdict in favor of the Wrights and assessed their damages at $279,000.  The trial court denied Sunrise's outstanding motion to strike and entered final judgment.  This appeal followed.

## DISCUSSION

Sunrise contends that the trial court erred in denying its motion to strike the Wrights' claim for breach of contract. Sunrise further contends the trial court erred in awarding final judgment to the Wrights.

Sunrise argues that the Wrights never claimed compensatory damages in their lawsuit or proved any compensatory damages at trial. According to Sunrise, the sole remedy the Wrights sought was rescission, with a repudiation and subsequent cancellation of the contract; and a total refund of all monies they had paid to Sunrise, less any offset that Sunrise could prove to the jury for the value of services the Wrights had received.

Sunrise contends that even though the Wrights had resided in their apartment at The Fairfax for almost four years and received substantial services and enjoyed amenities provided by Sunrise, the Wrights presented no evidence to allow the jury to determine the amount the Wrights should recover if the jury found Sunrise had materially breached the contract. Sunrise argues that without any evidence of the difference between the services the Wrights claimed they were entitled to receive pursuant to the contract and the services they did receive, the jury could only speculate in assessing damages. Sunrise asserts that since the Wrights did not prove their damages,

6

they failed to establish a prima facie claim for breach of contract.

In response, the Wrights argue that because Sunrise committed a material breach, the Wrights were entitled to repudiate and cancel the contract. The Wrights also contend they were entitled to receive as damages the difference in value between the benefits under the contract if they had been "first class" as contracted for and the value of the "actual" benefits the Wrights received.

The Wrights argue that the jury was provided with evidence of the agreed upon contract value of the "first class" benefits the Wrights were supposed to receive. According to the Wrights, they presented evidence regarding the deficient nature of these benefits, which were of such character that no precise evidence of value or lack of value could be ascertained. Thus, the Wrights contend that a precise determination of loss or reduction in value was not possible. In support of their position, the Wrights argue that plaintiffs are not required to prove their damages to a mathematical certainty, and that juries are allowed to consider probable and inferential proof and to rely upon their general knowledge in awarding damages.

"[W]here the trial court has declined to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to

consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff." Bitar v. Rahman, 272 Va. 130, 141, 630 S.E.2d 319, 325-26 (2006) (citation and internal quotation marks omitted). "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). The plaintiff bears the burden to establish the element of damages with reasonable certainty. Nichols Construction Corp. v. Virginia Machine Tool Co., LLC, 276 Va. 81, 89, 661 S.E.2d 467, 472 (2008). Damages that are contingent, speculative, and uncertain are not recoverable because they cannot be established with reasonable certainty. Shepherd v. Davis, 265 Va. 108, 125, 574 S.E.2d 514, 524 (2003); Crist v. Metropolitan Mortgage Fund, Inc., 231 Va. 190, 195, 343 S.E.2d 308, 311 (1986).

In pursuing a breach of contract claim against Sunrise, the Wrights are subject to well-established proof requirements imposed on any plaintiff in a breach of contract action. The Wrights failed as a matter of law to establish damages

resulting from the difference in the "first class" care Sunrise agreed to provide and the care they actually received.

The Wrights' arguments alone reveal the insufficiency of their evidence of damages.  In response to Sunrise's original motion to strike at the conclusion of the Wrights' case-in-chief, the Wrights argued that the value of the contracted-for services was contained in the continuing care agreement:

> This is pretty plain.  [The continuing care agreement] says what the entrance fee is, and it says what the monthly service fee is for the services.  And so if what we are looking at is the value of the services, then that's what we've got.

(Emphasis added).  At oral argument on appeal, the Wrights asserted that "the measure of damages in a contract case is the difference between what you paid for generally speaking and what you actually received."  However, the Wrights conceded that no evidence was presented on the value of average care or poor care from which the jury could calculate the difference between the value of the contracted-for services and the services actually received.

Throughout trial, the Wrights maintained the position that the jury had sufficient evidence to formulate an appropriate damages award.  When discussing jury instructions, the Wrights asserted that they were "going to ask [the jury] for so much of those amounts[, the entrance fee and monthly fees,] as [the

jury] deem appropriate from the evidence." The Wrights elaborated, "[W]hat we are asking the jury to do is we were [sic] asking the jury to allow the Wrights to cancel or repudiate the contract and give them back so much of the money as they have paid to [Sunrise] as [the jury] deem appropriate." When the trial court pointed out at this late stage in the trial that "[the Wrights] haven't put on evidence that would allow compensatory damages in . . . something other than a material breach," the Wrights responded: "We're not looking for compensatory damages."

During appellate argument, the Wrights' counsel explained that he was trying to say to the trial court "that the value of what the Wrights received given the contract wasn't worth anything. And therefore [they] were looking for the money back as damages." However, at trial, the Wrights' counsel acknowledged: "And [the Wrights] don't deny that they had the benefit of those [contracted-for] services for the period of time that they have been living . . . at The Fairfax." On cross-examination, counsel for Sunrise asked Colonel Wright if the pond, flowers, and maintenance at The Fairfax were part of his monthly fees, to which Colonel Wright replied: "Well, I guess so, sure. That's what we're paying for."

Clearly, the Wrights received services pursuant to the continuing care services contract over nearly four years

residing at The Fairfax.  The trial court correctly granted Sunrise's motion to strike the Wrights' rescission claim specifically because there had been part performance of the continuing care services contract "such that a rescission right no longer exists and therefore a count for rescission does not stand."  "[W]here a party wishes to rescind a contract on the ground of failure of consideration, if the failure has been partial only and a subsisting executed part performance is in his hands, and there has been no fraud on the part of the other, rescission will not be allowed."  Bolling v. King Coal Theatres, Inc., 185 Va. 991, 997, 41 S.E.2d 59, 62 (1947) (internal citations and quotation marks omitted).

Nevertheless, the Wrights pursued the remedy of rescission under the guise of a breach of contract claim because it was the only claim that survived Sunrise's motion to strike.  During Sunrise's argument on the motion to strike as to the contract claim, the trial court stated: "We are not dealing with the rescission count now; we are dealing with count III, which is the breach of contract.  But what you are – I understand you are giving me a rescission argument because the remedy that they have asked for is, in essence, rescission."  (Emphasis added).

"As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained."  Kamlar Corp. v. Haley, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983) (quoting

11

<u>Wright v. Everett</u>, 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956)). Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim. <u>Filak</u>, 267 Va. at 619-20, 594 S.E.2d at 614-15. The plaintiff also has the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery." <u>Shepherd</u>, 265 Va. at 125, 574 S.E.2d at 524 (citations omitted).

The Wrights failed to present to the jury evidence of any damages they sustained as a result of required repairs or out-of-pocket expenditures of any type necessitated as a consequence of Sunrise's breach. They also failed to provide the jury any evidence of the value of the services they received from Sunrise during almost four years of residence, which included not only the enumerated services they acknowledged were always available, but also the right to continuous care for the rest of their lives as long as they continued to pay the monthly fee. There was simply no evidence from which the jury could measure the difference between the value of the services that the Wrights contracted for and the value of the services that they received.

The Wrights were incorrect in their contention that a material breach of the contract entitled them to an award of

12

their entire entrance fee plus all the monthly fees they had paid less any amount that Sunrise could prove it was entitled to for its provision of services pursuant to the contract. When a plaintiff has proved a breach of contract, the burden of proof regarding damages does not then shift to the defendant. The burden of proof remains with the plaintiff to prove with reasonable certainty the measure of damages sustained.  The Wrights failed to present sufficient evidence upon which the jury could base an award of damages without resorting to speculation or conjecture.  Thus, the Wrights failed to establish a prima facie claim for breach of contract.

<u>CONCLUSION</u>

The trial court erred in denying Sunrise's motion to strike the breach of contract claim and in entering final judgment in favor of the Wrights.  For the reasons stated, we will reverse the judgment of the trial court and enter final judgment in favor of Sunrise.

<u>Reversed and final judgment.</u>