UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1219**

WESTERN INSULATION, LP,

              Plaintiff – Appellee,

      v.

HAL MOORE; MELANIE MOORE,

              Defendants – Appellants.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  James R. Spencer, Chief
District Judge.  (3:05-cv-00602-JRS)

Argued:  January 27, 2009           Decided:  March 12, 2009

Before MICHAEL, GREGORY, and AGEE, Circuit Judges.

Affirmed by unpublished opinion.  Judge Agee wrote the opinion,
in which Judge Michael and Judge Gregory joined.

**ARGUED:** John B. Simpson, MARTIN & RAYNOR, P.C., Charlottesville,
Virginia,   for   Appellants.    Paul   James   Kennedy,   LITTLER
MENDELSON, Washington, D.C., for Appellee.  **ON BRIEF:** Ronald S.
Sofen,  GIBBS,  GIDEN,  LOCHER,  TURNER  &  SENET,  L.L.P.,  Los
Angeles,  California,  for  Appellants.   Stephen  C.  Tedesco,
LITTLER MENDELSON, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

## I.  Background

In March 2001 the sole shareholder of Western Insulation, Inc. ("Insulation, Inc."), Hal Moore, sold the company to Western, L.P. ("Western"), for $41,990,000.00.  At the time of the sale, Hal's wife Melanie was an employee and the Chief Financial Officer of Insulation, Inc.  Both Hal and Melanie entered into identical Confidentiality, Non-Competition, and Non-Solicitation Agreements (collectively, "Agreements"), which were to be interpreted and enforced in accordance with Virginia law.

Within the time period encompassed by the Agreements Melanie used Hal's longstanding relationship with a bank to obtain financing for two new insulation companies that would compete with Western.  In March 2005 she signed a personal loan guaranty for a $1.41 million line of credit to assist her friend and former Insulation, Inc. employee, Stephanie Schulkamp, in forming one of those companies, American Insulation, Inc. ("American").  Without Melanie's guarantee and assistance, Schulkamp would not have qualified for the bank financing for American.

The loan guaranty agreement for American subjects Schulkamp to various restrictions and bestows certain benefits on Melanie. For example, Schulkamp can only earn $90,000 per year and must

2

obtain Melanie's consent to make any purchase for American exceeding $25,000. The agreement also entitles Melanie to certain financial information regarding American. In return for the guaranty, Melanie received a security interest in American's assets and an option to purchase 90 percent of American for $9,000. Schulkamp secured the guaranty with her home and her shares in American and is prohibited from transferring any collateral without Melanie's consent.

In addition to the guaranty for Schulkamp, Melanie signed a separate personal loan guaranty for a $1.015 million commercial line of credit to aid Dave Barnes, another former Insulation, Inc. employee. With Melanie's assistance Barnes obtained financing to start his own insulation business, Empire Insulation, Inc. ("Empire"). Melanie advised Barnes on the loan amount he should seek and, as with Schulkamp, took advantage of Hal's relationship with a bank to obtain financing for Barnes, which he would not have received without her guarantee and assistance.

Hal leased a building and some trucks to American, sold some of his trucks to Empire and hired two former employees of Insulation, Inc.

Alleging that the foregoing acts violated the Agreements, Western sought compensatory damages and injunctive relief from the Moores in the Circuit Court of Henrico County, Virginia.

3

The Moores removed the action to federal district court. Following a bench trial the district court ultimately found that the Moores breached the Agreements and awarded Western $943,659.00 in compensatory damages but denied Western's request for injunctive relief.

On appeal to this Court, we affirmed certain portions of the district court's judgment, but reversed other parts and remanded the case for further proceedings. Although we agreed with the district court that Hal breached his Agreement by hiring the two former Insulation, Inc. employees, Western proved no compensable damages for that breach. Hal's other actions were deemed to be arms-length transactions not in violation of his Agreement. "We conclude[d] the district court erred in finding that Hall breached his noncompete (other than by hiring two former employees." Western Insulation, LP v. Moore, 242 F. App'x 112, 118-19 (4th Cir. 2007) (unpublished) ("Western I"). We affirmed the district court's decision that Melanie breached her Agreement, but held that the district court erred in (1) placing a value of $500,000 on Western's damages arising solely as a result of the Moores' various breaches, (2) awarding damages for Western's reduced profit margins because such evidence was speculative and (3) awarding damages for Western's lost profits. Id. at 123-24. However, we agreed with Western that the district court erred in denying its request for

4

injunctive relief and accordingly remanded for further consideration by the district court.  Id. at 124.

Consistent with our holding on appeal Western asked the district court for injunctive relief

> to enjoin Melanie from (1) breaching her Agreement by providing any form of support to any of [Western's] competition or to Schulkamp or Barnes personally; (2) controlling or monitoring the finances of American or Empire; and (3) exercising the option agreement or the security agreement that she formed with American, entering into an option agreement or a security agreement with Empire, or obtaining any other ownership interest arising from a loan guarantee in either of those companies.  Western also ask[ed] the court (4) to enjoin Hal from breaching his Agreement by, directly or indirectly, soliciting, hiring, or employing any person who was formerly employed by [Western], or soliciting work from any of [Western's] customers.  Finally, Western ask[ed] the Court (5) to toll the Moores' Agreements until March 12, 2009, extending them by two years, the period of time that the Moores allegedly breached their Agreements.

Western Insulation, L.P. v. Moore, No. 3:05-CV-602, 2008 WL 191335, at *2 (E.D. Va. Jan. 22, 2008).  These measures were necessary, Western asserted, because the Moores' actions reduced the value of the goodwill for which Western had paid and it would suffer further harm if the Moores continued to assist Western's competitors.  Western also asked the district court to enter an award for nominal damages against both Hal and Melanie based on the adjudicated breach of the Agreements.

The Moores argued that our decision absolved them of liability for breaching their Agreements and implied that they

5

were unlikely to breach them in the future. Based on this interpretation of our prior decision they asked the district court to reject Western's request for nominal damages and enter judgment in their favor because (a) Western's prior failure to prove compensatory damages necessarily foreclosed a successful cause of action for breach of contract under Virginia law, and (b) the doctrine of judicial estoppel barred Western's request for nominal damages.

The district court conducted a thorough analysis of the requirements for equitable relief and found such relief was warranted as to Melanie, but not Hal. Accordingly, the district court forbade Melanie from:

> (1) providing any form of support to any of the Company's competitors or to Stephanie Schulkamp or David Barnes personally; (2) controlling or monitoring the finances of American or Empire; and (3) exercising the option agreement or the security agreement that she formed with American, entering an option agreement or a security agreement with Empire, and obtaining any other ownership interest in either of those companies arising from a loan guarantee.

Id. at *5. Having determined that Melanie "breached her Agreement for a total of two years, ten months, and seventeen days-the period from March 5, 2005 to the date of [its] Memorandum Opinion" (January 22, 2008), the court extended her

6

obligations under the Agreement for that period of time.[1]  Id.
The court then determined that Western had not been irreparably
harmed by Hal's breach of his Agreement and refused to "extend
his obligations under [his] Agreement" or enjoin him from
"soliciting, hiring, or employing any other people who worked
for [Western]".  Id.

The district court also determined that language in the
Agreements "relieve[d] Western of the burden of proving damages
to establish a claim" for breach of contract and that this
Court's determination that Western's evidence on compensatory
damages was insufficient to support an award did not preclude an
award of nominal damages.  Id. at *6.  The district court
rejected the Moores' arguments, entered judgment against both
Hal and Melanie, and awarded nominal damages of $100.00 against
both defendants.

The Moores timely appealed the judgment of the district
court and we have jurisdiction under 28 U.S.C. § 1291.  For the
reasons that follow, we affirm the district court's judgment in
all respects.

---

[1] Absent injunctive relief the Moores' obligations under
their Agreements would have expired on March 12, 2008.

7

## II.  Injunctive Relief

As an initial matter, we note that "we review the grant of a permanent injunction for abuse of discretion." Virginia Soc'y for Human Life, Inc. v. Federal Election Comm'n, 263 F.3d 379, 392 (4th Cir. 2001).  This same standard applies to our review of an injunction's scope. Id. "With respect to injunctive relief, '[w]hat we mean when we say that a court abused its discretion, is merely that we think that [it] made a mistake.'" Wilson v. Office of Civilian Health and Med. Programs of the Uniformed Servs., 65 F.3d 361, 363 (4th Cir.1995) (quoting Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 814 (4th Cir.1991)).

On appeal Melanie challenges the district court's grant of injunctive relief on several grounds.  First, she contends the restrictions imposed on her are overly broad.  Second, she argues that injunctive relief was inappropriate because there was no evidence establishing that she would violate the terms of her Agreement in the future.  Finally, Melanie avers the district court erred in extending the terms of her Agreement for two years, ten months, and seventeen days from the date of the district court's order.  For the reasons below we reject these arguments.

A.   Overbreadth of the Injunction

The relevant portion of the district court's Order granting equitable relief to Western provides as follows:

Melanie Moore is hereby ENJOINED from

(1)   providing any form of financial assistance, including a loan guarantee, to any competitor of Western Insulation, Inc., or to Stephanie Schulkamp or David Barnes personally;

(2)   engaging in any financial control or oversight of American Insulation, Inc. ("American") or Empire Insulation, Inc. ("Empire"); and

(3)   exercising any option agreement and security agreement that she entered with American, entering any option agreement or security agreement with Empire, or obtaining any other form of ownership or business interest in American or Empire,

for a period of two years, ten months, and seventeen days from the date of this Order.

J.A. 852-53.   Melanie contends this language is impermissibly broad because sections (1) and (2) are unlimited in duration and thus are indefinite time restrictions on her.   She also avers that section (1) exceeds the scope of her Agreement by precluding even personal financial assistance to either Barnes or Schulkamp.   We find Melanie's arguments unavailing.

A plain reading of the Order's language indicates the time limitation applies with equal force to all three sections, not just the last prohibition against exercising options and agreements with American or Empire.   Moreover, the Order itself

9

makes clear that the district court's rationale is "explained in the Memorandum Opinion accompanying this Order." J.A. 852. In its Memorandum Opinion the district court stated that

> Melanie has breached her [Non-Compete Agreement] for a total of two years, ten months, and seventeen days – the period from March 5, 2005 to the date of this Memorandum Opinion. Accordingly, the Court will issue an injunction that will, in effect, extend her obligations under her Agreement for a period of that length.

J.A. 845 (emphasis added). The reference to "obligations," in plural form, provides additional evidence that all of the prohibitions in the district court's order were subject to the time limitation. The district court's Order and the record show unequivocally, contrary to Melanie's strained interpretation, that she is enjoined from all the enumerated activities for a period of two years, ten months, and seventeen days from January 22, 2008.

Melanie also contends that the district court's prohibition against personal financial assistance to Barnes or Schulkamp goes beyond the terms of her Agreement with Western. However, if Melanie had not breached the Agreement by providing substantial financial assistance to establish businesses in direct competition with Western, as she had agreed not to do, she would remain free to offer personal financial assistance to Barnes or Schulkamp if she wished. As the district court no doubt realized, equitable relief prohibiting direct financial

10

assistance to Empire and American but permitting a virtually unlimited subsidy for the personal expenditures of those companies' principals would naturally and impermissibly accrue to the benefit of Empire and American by simply moving funds from one pocket to another. The relief designed by the district court was "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). As such, the district court did not err.

B.   Future Violations

Melanie asserts that the award of injunctive relief was unwarranted because there was no evidence she would violate the Agreement in the future. She argues that under Virginia law the decision to enter an injunction prohibiting "the future commission of an anticipated wrong depends, in each case, upon the nature of the wrong and upon the likelihood that the wrong will be committed." WTAR Radio-TV Corp. v. City of Virginia Beach, 216 Va. 892, 895, 223 S.E.2d 895, 899 (1976). She asserts that because there is no evidence in the record suggesting that she will violate the Agreement in the future, entry of injunctive relief was improper. These arguments are unpersuasive for several reasons.

In Western I we addressed Western's cross-appeal, which challenged the district court's refusal to grant injunctive

11

relief because "indispensable parties [were] not before the Court, whose presence would be necessary in order . . . to fashion complete injunctive relief." 242 Fed.Appx. at 124. We determined that "[a]lthough clearly some of the injunctive relief that Western requested would 'undermin[e] legitimate commercial contracts or employment agreements,' [a] subset of relief Western" requested would not. Id. Accordingly, we reversed the district court's denial of injunctive relief and remanded to the district court to determine in the first instance whether to award such relief. The relief granted by the district court compares favorably, indeed almost identically, to that approved by this Court in Western I.

Melanie's arguments also rest on the false premise that Western does not suffer continuing damage from Melanie's breach. Her loan guaranties enabled Empire and American to exist as continuing competitors to whom Western may still lose business. Absent the injunction Melanie's intimate financial entanglement with American and Empire could continue unabated, to Western's detriment. In short, the likelihood that Melanie may commit a "new" breach in the future is irrelevant when her breach and the resulting damage continue.

C.   Time Limitation

Melanie further claims the district court erred because the extension of the non-compete provisions of her Agreement should

12

have been for one year, five months, and twenty-three days, instead of two years, ten months, and seventeen days as imposed. She argues that because we determined in Western I certain injunctive relief would have been proper, the extension of her obligations under the Agreement should be limited to the time between her breach on March 5, 2005 and the date of the district court's original (albeit erroneous) decision on August 29, 2006 instead of the date of its judgment entered on remand. In short, Melanie says she should not be penalized because the district court erred in her favor by refusing to enter injunctive relief in its first decision on August 29, 2006. Again, we disagree.

The thrust of Melanie's argument is that although the Moores successfully opposed the entry of injunctive relief against them in the district court, she should benefit from our subsequent determination in Western I that injunctive relief was appropriate as to her. This argument disregards the fact that, absent injunctive relief, Melanie's breaches were permitted to continue during the pendency of the appeal until entry of the district court's Order on January 22, 2008. See Western Insulation, L.P., No. 3:05-CV-602, 2008 WL 191335, at *5 (finding that Melanie "breached her Agreement on March 5, 2005, when she obtained the right to purchase American, a breach that has continued to this day."). The district court did not abuse

13

its discretion in forging its injunctive remedy and extending Melanie's obligations as provided in the district court's judgment.

## III. Nominal Damages

The Moores make two principal arguments in support of their contention that the district court erred in awarding nominal damages to Western. They assert that Western's failure to prove compensatory damages as determined by this Court in Western I precludes Western from establishing all the elements necessary for a breach of contract claim under Virginia law. In addition, they argue the principle of judicial estoppel applies.

### A. Breach of Contract Damages

Under Virginia law "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004)); Ulloa v. QSP, Inc., 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006); see also Sunrise Continuing Care, LLC v. Wright, Record No. 072501, 2009 WL 103320, at *3 (Va. Jan. 16, 2009).). "Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim." Id. at *5. "The plaintiff

14

also has the 'burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery.'" Id. (quoting Shepherd v. Davis, 265 Va. 108, 125, 574 S.E.2d 514, 524 (2003)). The Moores argue that in light of our determination in Western I that Western failed to prove its claim for compensatory damages, the district court improperly awarded nominal damages in satisfaction of the third element of a breach of contract claim. We believe the Moores misconstrue Virginia law related to damages in the context of the facts of this case.

"[I]t is . . . well-settled that parties to a contract may specify the events or pre-conditions that will trigger a party's right to recover for the other party's breach of their agreement." Ulloa, 271 Va. at 79, 624 S.E.2d at 48. This includes the right to contract in such a way as "to eliminate damages as a required element of a breach of contract action." Id. at 80, 624 S.E.2d at 48. Like the Ulloa Court, "the focus of our analysis is to determine whether the parties in fact agreed to modify the traditional elements of a breach of contract action so as to permit [Western] to obtain a valid breach of contract verdict in the absence of a finding of damages." Id.

Section 5 of each Agreement provided as follows:

**5.** <u>**Remedies**</u>.   Moore hereby acknowledges that his covenants and obligations hereunder are of special, unique, unusual, extraordinary, and intellectual character, which gives them a peculiar value, <u>the actual and threatened breach of which shall result in substantial injuries and damages, for which monetary relief may fail to provide an adequate remedy at law.</u> Accordingly, Moore agrees that the Partnership shall be entitled, in the event of an actual or threatened breach of this Agreement, to seek remedies including, but not necessarily limited to (i) temporary or permanent injunctive relief; (ii) specific performance, and (iii) <u>monetary relief, to the extent that monetary relief may constitute an adequate remedy in whole or in part</u> . . .

J.A. 762 (emphasis added).

Based on paragraph 5 of the Agreements, the district court concluded that because a breach by Hal or Melanie "shall result in substantial injuries," and shall entitle Western "to seek remedies including, but not necessarily limited to . . . monetary relief, to the extent that monetary relief may constitute an adequate remedy in whole or in part," identification of the remedies would be "superfluous unless it was intended to emphasize that Western would not have to prove it suffered harm." J.A. 847-48. The Moores contest this interpretation of paragraph 5.[2]

---

[2] Although <u>Ulloa</u>, like this case, involved the breach of the "confidentiality, no-solicitation, and non-competition provisions" of a contract, it is not dispositive of the issues presented in this appeal. 271 Va. at 76, 624 S.E.2d at 46. The Virginia Supreme Court's determination that Ulloa's employer was not required to prove damages as an element of its breach of contract claim rested on the parties' consent to jury (Continued)

16

"A court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." Pocahontas Mining LLC v. CNX Gas Co., LLC, 276 Va. 346, 352, 666 S.E.2d 527, 531 (2008). Here, in the first sentence of section 5 of the Agreements, the Moores explicitly acknowledge that any breach on their part "shall result in substantial injuries and damages . . . ." By this plain language the parties have agreed that a breach by Hal or Melanie necessarily results in damage to Western for which Western "shall be entitled to . . . to seek" various remedies, including injunctive relief and/or monetary damages. Thus, the parties contractually agreed that a breach of contract claim could be established absent proof of compensatory damages. While the language in the Moores' Agreements permitted Western to establish a breach of contract claim under Virginia law once the first two elements were proven, Western's compensatory damages were limited to those monetary damages it could prove with "reasonable certainty"

---

instructions mandating a verdict adverse to Ulloa if his employer proved only two elements – that there was a contract and Ulloa breached it. Once the jury found a breach of contract on those instructions, it became the law of the case. 271 Va. at 80, 624 S.E.2d at 48.

17

which, in this case, were none.  The question remains, however, whether Western, once it proved a breach, could recover nominal monetary damages under Virginia law when it did not prove compensatory damages.

"[U]pon the breach of a valid and binding contract the law infers nominal damages, it does not infer or presume substantial or compensatory damages.  The latter must be proven by competent evidence.  [Compensatory damages] are such as indemnify the plaintiff and generally measure the plaintiff's actual loss and provide amends therefor." Orebaugh v. Antonious, 190 Va. 829, 834, 58 S.E.2d 873, 875 (1950).

In Crist v. Metropolitan Mortg. Fund, Inc., 231 Va. 190, 195, 343 S.E.2d 308, 311 (1986), the Supreme Court of Virginia affirmed a lower court's award of nominal damages.  The Virginia trial court had determined that the plaintiff established the defendant's breach of contract but failed to prove compensatory damages.  The trial court awarded nominal damages in the amount of $100.00.  On appeal, the Supreme Court of Virginia affirmed "the judgment of the trial court denying compensatory damages but awarding nominal damages of $100" because when "damages, if any, cannot be established with reasonable certainty, no actual damages can be recovered." Id. (emphasis added).

Virginia law, as expressed in Orebaugh and Crist, distinguishes between nominal and compensatory damages.  Nominal

18

damages do not, by definition, compensate the aggrieved party –
they merely recognize that the aggrieved party's rights have
been violated by the party in breach.  Virginia law thus
provides for an award of nominal damages in cases where the
plaintiff proves that a breach of contract occurred but does not
prove compensatory damages, as in this case.  Although not
specifically adopted by the Supreme Court of Virginia, this view
comports with Section 346 of the Restatement (Second) of
Contracts and other secondary sources:

> (1) The injured party has a right to damages for any
> breach by a party against whom the contract is
> enforceable unless the claim for damages has been
> suspended or discharged.
>
> (2) If the breach caused no loss or if the amount of
> the loss is not proved under the rules stated in this
> Chapter, a small sum fixed without regard to the
> amount of loss will be awarded as nominal damages.

Restatement (Second) Contracts § 346 (1981).

> Only nominal damages are recoverable upon the breach
> of a contract, if no actual or substantial damages
> result from the breach or no damage is shown.
> Examples include those cases in which:
>
> (1)    actual damage is uncertain or not
> susceptible of proof;
>
> (2) damages are too remote, conjectural, and
> speculative   to form the basis of a legal recovery;
> . . . .

22 Am. Jur. 2d Damages § 17.

To hold, as the Moores urge, that Western's failure to
prove compensatory damages extinguishes a remedy of nominal

19

damages for breach of contract would contradict Virginia law as expressed in <u>Orebaugh</u> and <u>Crist</u>. Accordingly, the district court did not err in entering judgment against Hal and Melanie and awarding nominal damages to Western from both.[3]

B.   Judicial Estoppel

We also reject the Moores' argument that Western's request for nominal damages on remand from this Court is barred by the doctrine of judicial estoppel.

> Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court. <u>See</u> <u>John S. Clark Co. v. Faggert & Frieden, P.C.</u>, 65 F.3d 26, 28 (4th Cir.1995). Three elements must be satisfied before judicial estoppel will be applied. 'First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation.' <u>Lowery v. Stovall</u>, 92 F.3d 219, 224 (4th Cir.1996). The position at issue must be one of fact as opposed to one of law or legal theory. <u>Id.</u> 'Second, the prior inconsistent position must have been accepted by the court.' <u>Id.</u> Lastly, the party against whom judicial estoppel is to be applied must have 'intentionally misled the court to gain unfair advantage.' <u>Tenneco Chems., Inc. v. William T.</u>

---

[3] We observe that, as a practical matter, few plaintiffs will find a purpose in pleading nominal damages when they primarily seek to recover compensatory damages. That being said, we note that a properly pled request for nominal damages is not negated if a claim for compensatory damages fails. <u>See</u>, <u>generally</u>, <u>Orebaugh</u>, 190 Va. at 834, 58 S.E.2d at 875. We also note that our affirmance of Western's award of nominal damages against the Moores does not address whether that award qualifies Western as a "prevailing party" under the Agreements. That issue is not before us in this appeal and we express no opinion in that regard.

20

> Burnett & Co., 691 F.2d 658, 665 (4th Cir.1982). This bad faith requirement is the 'determinative factor.' John S. Clark Co., 65 F.3d at 29.

Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007). "The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process."[4] Lowery, 92 F.3d at 223. 1996). In the present case, the doctrine of judicial estoppel does not bar Western's request for, nor the district court's award of, nominal damages.

Western's argument on remand that it was entitled to recover nominal damages was legal, not factual, and was a direct response to this Court's determination on appeal in Western I that it had failed to prove compensatory damages. Prior to our decision in Western I, there was no reason for Western to assert its entitlement to nominal damages in light of its steadfast belief that it should recover (and could prove) compensatory damages. For the same reason, it is plainly evident that Western did not act in bad faith or intentionally mislead the district court. The doctrine of judicial estoppel simply does not apply to the district court's award of nominal damages on remand in this matter.

---

[4] As we have noted, "judicial estoppel is a matter of federal law, not state law. . . ." Lowery, 92 F.3d at 223 n.3.

21

IV.

In conclusion, we affirm the district court's judgment, including the award of injunctive relief, the entry of judgment against Hal and Melanie and the award of nominal damages against both.

<u>AFFIRMED</u>