Affirmed by unpublished opinion.
Judge GREGORY wrote the opinion, in which Judge MICHAEL joined. Judge NIEMEYER wrote a separate opinion concurring in part and dissenting in part.
Unpublished opinions are not binding precedent in this circuit.
GREGORY, Circuit Judge.
After extensive litigation on liability and damages for the defendants’ breach of their non-compete agreement concluded with a finding against the defendants, Hal and Melanie Moore, the District Court for the Eastern District of Virginia awarded Western Insulation, L.P. $218,705.90 in attorneys’ fees and costs. The district court found the award of attorneys’ fees proper because the non-compete agreement between the parties mandated the receipt of fees for actions to enforce a breach of its terms, and the court imposed the amount of fees it believed to be proportional to the relief obtained in the case. Because we find the contractual provision awarding attorneys’ fees enforceable and the amount of fees awarded reasonable as to each defendant, we affirm the district court’s order.
I.
We have previously discussed the factual background of the breach in this case in our opinions in Western Insulation, L.P v. Moore, 242 Fed.Appx. 112 (4th Cir.2007) (reversing the district court’s award of damages and attorneys’ fees and holding that the imposition of an injunction would not have harmed third parties), and Western Insulation, L.P. v. Moore, 316 Fed.Appx. 291 (4th Cir.2009) (affirming the district court’s finding of nominal damages and imposition of an injunction as to Melanie Moore). Thus, here we describe only the facts which have bearing on the award and reasonableness of attorneys’ fees.
In March 2001, Western, Inc. (“Western”) entered into an agreement with Hal Moore (“Hal”) to purchase his company, Western Insulation, for over $41 million. As part of that agreement, Hal and his wife Melanie Moore (“Melanie”) entered into an agreement not to compete with Western for a period of seven years following the completion of the transaction. Hal and Melanie did not, however, abide by their agreement. Contrary to the specific provisions of the agreement, Hal hired two former Western employees to work in his remaining business ventures. Additionally, Melanie acted as a surety for a $1.41 million line of credit to one of her former employees who formed the company American Insulation, a competitor of Western. For her guarantee of the loan, Melanie was given the right to buy up to ninety percent of American Insulation for $9,000 at the end of her non-compete period. Melanie also signed a second surety agreement for another former employee who formed Empire Insulation, also a competitor of Western.
Because of these breaches of the non-compete agreement, Western filed suit, and at the conclusion of a three-day bench trial, the district court found that both defendants had breached their covenants not to compete, among other violations, and awarded $943,659 in damages and $361,660 in attorneys’ fees. On appeal, however, we held that there was no basis for the district court to award damages for the breaches because the plaintiff had not shown any compensable harm. We thus vacated the district court’s orders as to both damages and attorney’s fees. Western Insulation, 242 Fed.Appx. at 125. However, this Court did find that the plaintiff had established that Melanie had breached her covenant not to compete and *378 Hal had breached his non-solicitation agreement, id. at 117-19, and the district court erred in denying the plaintiff an injunction against Melanie, id. at 124-25.
On remand, the plaintiff requested that, instead of compensatory damages, the court impose a permanent injunction against Melanie to prevent her from competing with Western and award nominal damages for the breaches of contract. The district court did so, finding a permanent injunction proper as to Melanie and awarding $100 in nominal damages from each defendant for the breaches of contract. This Court on appeal affirmed the result in its entirety. Western Insulation, 316 Fed.Appx. at 300.
In a separate opinion, the district court again awarded attorneys’ fees to the plaintiff: $165,414.83 from Melanie and $41,606.46 from Hal. The district court discussed each of the twelve Kimbrell’s factors and determined that the award of a permanent injunction as to Melanie and the finding of a breach of the contract by both parties entitled the plaintiff to some of its attorneys’ fees. See Barber v. Kimbrell’s, Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978). Western claimed that it spent $584,380.28 in attorneys’ fees litigating the case in Virginia.[1] In calculating the lodestar amount of fees for the case, the court broke the litigation fees down into the amount spent litigating each part of the case: trial, appeal and remand. Of the $348,365 spent litigating the case on the merits, the court awarded one quarter of the fees against Melanie, because it found half of the plaintiffs goal had been realized: an award of damages against each defendant. Of the $154,098 in fees spent to appeal the judgment to the Fourth Circuit in the first instance, the court awarded half the fees, split evenly between Hal and Melanie, because this Court had ruled in favor of injunctive relief and found breaches of the agreement. Finally, of the $55,092.28 spent to litigate the case on remand, the court again awarded half the fees, for which only Melanie was responsible, because the plaintiff obtained the remedy of a permanent injunction against Melanie and nominal damages. The court increased the lodestar amount by eight percent given the complexity of the case and arrived at the total fee award of $270,021.29. This timely appeal followed concerning solely the award of attorneys’ fees.
II.
This Court reviews the district court’s decision to award attorneys’ fees under an abuse of discretion standard. McDonnell v. Miller Oil Co., 134 F.3d 638, 640 (4th Cir.1998) (citing Colonial Williamsburg Found. v. Kittinger Co., 38 F.3d 133, 138 (4th Cir.1994)). The Moores present two issues upon appeal: whether attorneys’ fees were lawfully awarded, and if so whether the amount of fees was reasonable in light of the relief achieved against each defendant. We address each issue in turn.
A.
In the course of his briefing, Hal argued that there was no basis upon which the court could award fees against him as Western had only been awarded nominal damages from him.[2] At oral argument, however, counsel for the Moores stated *379 they did not contest the imposition of fees, only the reasonableness of the amount awarded. Nevertheless, we briefly describe the basis for awarding fees.
Hal’s argument relies upon this Court’s decision in Mercer v. Duke University, 401 F.3d 199 (4th Cir.2005), and the Supreme Court’s ruling in Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Both of those cases held that when only nominal damages are awarded, attorneys’ fees are not generally available. Mercer, 401 F.3d at 203 (quoting Farrar, 506 U.S. at 115, 113 S.Ct. 566). The Courts’ view in those cases was that when the plaintiff fails to prove an essential element of damages — that any are warranted — the usual award is no fee at all. Far-rar, 506 U.S. at 115, 113 S.Ct. 566. To determine whether a nominal damages case is the exceptional case meriting fees, the court must apply a three factor test. First, and most importantly, the court must compare the relief sought and the relief obtained. Mercer, 401 F.3d at 204. Second, the court evaluates the “significance of the legal issue on which the plaintiff prevailed.” Id. at 206 (quoting Farrar, 506 U.S. at 122, 113 S.Ct. 566.) Finally, the court determines whether the litigation served a public purpose beyond the dispute between the parties. Id. at 207.
However, as argued by Western, there is a fundamental difference between this case and Mercer and Farrar: the source of the right to attorneys’ fees. In the two cases cited by Hal,' the plaintiff’s entitlement to fees was a result of 42 U.S.C. Section 1988, which gives the district court discretion to decide whether the plaintiff is entitled to fees in certain civil rights actions. In the language of Section 1988, the district court “may allow” recovery of fees. As such, any recovery of fees is plainly discretionary. This Court recognized in Mercer that the statute at hand merely made the plaintiff eligible for, not entitled to fees. 401 F.3d at 203. For this reason, the Moores’ reliance on Mercer in their brief and at oral argument is misplaced. While it is true that the search for reasonableness in a fee award writ large is similar both here and in Mercer, the entitlement to fees here has nothing to do with the congressional policy of awarding fees in some civil rights actions.
By contrast, the source of Western’s entitlement to fees in this case is the agreement itself, which the Moores breached. Paragraph Five of the Moores’ non-compete agreement with Western provides that “in any action in law or in equity ... to enforce this Agreement, the prevailing party in such action shall be entitled to reasonable attorneys’ fees, costs, and necessary disbursements .... ” J.A. 299 (emphasis added).[3] As this case is a diversity action based on state contract law, the contract, including its provisions on attorneys’ fees, is to be interpreted using state law. The Virginia Supreme Court has defined “prevailing party” for fees and costs purposes broadly as the party in whose favor the judgment is entered in the case. Richmond v. City of Henrico, 185 Va. 859, 41 S.E.2d 35, 41 (1947). This definition of prevailing party certainly includes the party for whom judgment is entered in the form of nominal damages. Further, in Ulloa v. QSP, the Virginia Supreme Court held that the trial court properly awarded attorneys’ fees to QSP for its breach of contract claim against Ulloa, per a contractual provision awarding fees, even though the jury, after finding that Ulloa breached the contract, declined to award any damages for the breach. 271 Va. 72, 624 S.E.2d 43, 49 (2006). Noting that “parties are free to draft and adopt contractual provisions shifting the responsibility for attorneys’ fees to the losing party in a *380 contract dispute,” the court upheld the fee award for the breach of contract claim. Id. (citing Mullins v. Richlands Nat'l Bank, 241 Va. 447, 403 S.E.2d 334, 335 (1991)).
This case therefore appears to be controlled by Virginia law allowing the award of attorneys’ fees to a prevailing party, broadly defined, when those fees are mandated by contractual provision between the parties. There is no reason why this provision in the contract should not be enforced against both Melanie and Hal. The question then is whether those fees awarded were reasonable, an issue to which we now turn.
B.
The central argument Hal and Melanie make upon appeal is that even if the award of fees was proper, it was unreasonable. Hal argues that requiring him to pay $41,606.46 in fees when only $100 in nominal damages was assessed against him is presumptively unreasonable. Melanie argues that the district court incorrectly awarded “virtually” the same amount of attorneys’ fees against her when the plaintiff received an injunction and nominal damages as it did when the plaintiff had received over a $1 million judgment.[4] This is an error, she argues, because the district court incorrectly valued the issuance of an injunction and the recovery of significant compensatory damages as equally important to the plaintiff and splitting the fees equally between claims was not proper. For the reasons enumerated below, we find both of these arguments unavailing.
In reviewing a fee award, this Court gives substantial deference to the district court which tried the case because of that court’s “intimate knowledge of the efforts expended and the value of the services rendered.” Kimbrell's, 577 F.2d at 226. Even if awarding fees is mandated by a contractual provision, the amount awarded must still be reasonable. Mullins, 403 S.E.2d at 335. To determine the reasonableness of an award, this Court has held that a district court must make “detailed findings of fact with regard to the factors considered.” Kimbrell’s, 577 F.2d at 226. These factors must include “the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances.”[5] Mullins, 403 S.E.2d at 335 (citing Beale v. King, 204 Va. 443, 132 S.E.2d 476, 478 (1963)). From its consideration of those factors, the court should determine how many hours were reasonably required for the litigation and then calculate the lodestar amount using an hourly rate. Miller Oil, 134 F.3d at 640. The lodestar rate may then be adjusted for the particular factors and difficulties of the case at hand.
*381 The district court in this case explained its rationale for awarding fees against Hal and Melanie at great length, discussing each of the twelve factors enunciated by the court in Kimbrell’s. See supra n. 5. The most salient factor for the district court was the complexity of the case given the number of motions for summary judgment, extensive discovery litigation, and bicoastal nature of the suit. Additionally, even though Western “obtained only one meaningful form of relief — an injunction against Melanie,” the court found the issues so intertwined that it was impossible to view the work done to achieve the injunction as separable from the rest of the litigation. J.A. 335. The Supreme Court held in Hensley v. Eckerhart, that when a suit involves several claims that have a core of related facts, division of hours between claims can be an exercise in futility. 461 U.S. 424, 434-35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Therefore, the “district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.” Id. at 434, 103 S.Ct. 1933. Additionally, this Court has held that a district court evaluating the degree of success on the merits between successful and unsuccessful claims should not look to the motives of the plaintiff as guidance, meaning the court should not attempt to determine what the plaintiff would have thought more important. Mercer; 401 F.3d at 205. The comparison should be with the relief “sought ” not the relief “most important” to the plaintiff. Id. (emphasis added). The court must therefore view the entirety of the suit objectively.
In this case,, the plaintiff sought both damages and an injunction in his original complaint against the Moores. Concerning an injunction, the plaintiff sought three types of preliminary and permanent injunction: to prevent further unfair competition, contractual breaches, and misappropriation of trade secrets. Western also sought compensatory damages at the amount proved at trial. The complaint also, of course, sought a finding of a breach in order to receive either remedy.
At the conclusion of the liability and damages portion of the proceedings before the district court, the plaintiff received nominal damages and an injunction. Though it was not all the relief sought in the complaint, Western certainly was the prevailing party under Virginia law. It cannot be said from the face of the complaint or the remedy achieved, therefore, that injunctive relief was not an important remedy. Additionally, while no compensa-ble damages were awarded, the suit did result in a finding of liability. Valuing the damages in unfair competition cases can be extremely difficult. See PADCO Advisors, Inc. v. Omdahl, 179 F.Supp.2d 600, 612 (D.Md.2002) (“It is for this reason that courts have routinely enforced covenants not to compete, as it is nearly impossible to quantify the amount of damage caused when former employees work for direct competitors. In order to protect an employer’s business interests, such as a loss of clients and good will, covenants not to compete that require specific performance are enforceable.”). Thus, the achievement of a permanent injunction in an unfair competition case is not negligible. In fact, it is a significant result in that it enforces the original agreement between the parties.
Melanie attempts to turn precedent on its head by advancing an argument which evaluates the importance of each kind of relief. This is plainly erroneous where we have stated that the relief is to be viewed objectively and where district courts routinely grant permanent injunctions in non-competition cases. Viewing this case objectively, the plaintiff achieved significant relief.
*382 Given the relief achieved against each defendant, the court then calculated the lodestar amount for each defendant individually. As regards Hal, the court awarded one fourth of the amount of fees Western incurred when appealing the case to the Fourth Circuit, $41,606.46 of $154,098 after the eight percent lodestar adjustment.[6] Hal was not responsible for any of the fees for litigation before the district court at trial or on remand. The district court found the award of fees for the litigation before the Fourth Circuit particularly proper because this Court held that Hal had violated his agreement not to compete, constituting a final judgment on the issue of Hal’s breach. We find it was not an abuse of discretion for the district court to order Hal to pay one-quarter of the fees for the appeal which found both Hal and Melanie at fault. The fact that Hal was adjudged in violation of his non-compete agreement, even though only nominal damages were awarded, made Western a prevailing party against him and entitled the plaintiff to fees. Thus, the district court was reasonable in awarding a select portion of the fees to Hal when the fees concerned the part of the litigation where his fault was determined.
As regards Melanie, the district court ordered her to pay one fourth of the fees incurred to try the case, one fourth incurred to litigate the case before the Fourth Circuit, and one half incurred to litigate the case on remand, a total of $174,750.81 after the lodestar adjustment. The court’s logic was that the plaintiff had achieved half of the relief sought at trial (damages), half sought on appeal (injunction and finding of breach), and half on remand (permanent injunction). This division of fees was certainly not an abuse of discretion when Western achieved substantial relief, though not all of the relief sought, such that an award of all fees was not proper. In the aggregate, the fee award from Melanie cannot be said to be excessive when the plaintiff spent $557,555.30 litigating the case to a successful conclusion. Therefore, the district court did not err in the fee award from Melanie.
III.
This Court therefore affirms the decision of the district court below.

AFFIRMED.

. The district court earlier did not allow the plaintiff to collect fees from the original action brought in California. That case was voluntarily dismissed by the plaintiff and then re-filed in Virginia to comply with a contractual provision requiring that any action to enforce the agreement be brought in Virginia.

. Melanie did not contest the fact that attorneys’ fees could be awarded against her, only the reasonableness of the award.

. All citations to “J.A.-" refer to the Joint Appendix provided by the parties in this case.

. In its first opinion awarding fees in this case, the district court did not mention how the fees were to be divided, presumably because the fees were awarded after the court found that the defendants violated the non-compete agreement jointly. Melanie calculates her half of the fee award in the first instance to be $186,672.29.

. The factors suggested by this Court for the district court to consider are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney’s opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys’ fees awards in similar cases.” Kimbrell's, 577 F.2d at 226 n. 28.

. The eight percent adjustment occurred because the court felt the lodestar amount should be increased slightly given the length and complexity of the case.