## Richmond

Dan River, Inc.

v.

Commercial Union Insurance Company

Record No. 811288.

June 15, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Gordon, Retired Justice.

*Lewis T. Booker; Michael P. Regan (G. H. Gromel, Jr; Hunton & Williams*, on briefs), for appellant.

*Frank O. Meade (Meade, Tate & Daniel, P.C.*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The dispositive issues in this insurance case are whether notice of claim furnished by the insured to the insurer was untimely and, if so, whether the insurer waived the right to rely on a late-notice defense.

In September of 1977, appellant Dan River, Inc. filed a petition for declaratory judgment against appellee Commercial Union Insurance Company. The suit sought determination that certain insurance policies provided coverage for sums Dan River became obligated to pay as the result of a suit then pending in federal district court styled *Julious Adams, et al.* v. *Dan River Mills, Inc.*

The *Adams* suit had been filed in 1969, the plaintiffs having alleged that racial discrimination in employment practices violated the federal Civil Rights Acts of 1866 and 1964. Dan River had notified the insurer of this suit in March of 1977, and the insurer had denied coverage.

Following a bench trial in the present proceeding, the court below ruled in favor of the insurer. We awarded Dan River an appeal from the judgment order entered in May of 1981.

The facts substantially are undisputed. From 1964 to 1972, Dan River was insured under three successive umbrella policies, furnishing various liability coverages, issued by predecessors to Commercial Union. Under the policies, the insurer agreed to insure Dan River "for all sums which the insured shall be obligated to pay by reason of the liability imposed upon [it] by law or liability assumed by [it] under contract or agreement for damages, and expenses . . . because of . . . personal injuries. . . ." The policies defined the term "personal injuries" to include "discrimination." The insurance contracts further required the insured to give notice to the insurer of an "occurrence" arising under the policy. The term "occurrence" was defined, in part, as "an event, or continuous or repeated exposure to conditions" which results in personal injury.

On October 24, 1969, the *Adams* suit, a class-action civil rights proceeding, was filed in the United States District Court for the Western District of Virginia at Danville. Prior to that time, all the named plaintiffs, except one, had filed charges of racial discrimi-

nation against Dan River with the federal Equal Employment Opportunity Commission. In their complaint, the *Adams* plaintiffs sought preliminary and permanent injunctive relief, a monetary award for "back pay," and award of costs and reasonable attorney's fees.

In April of 1973, the federal court appointed a Special Master for the purpose of conducting the trial of the matter and reporting to the court proposed findings and conclusions of law on the issues involved. The Special Master conducted hearings during 1973 and 1974. In July of 1975, during a conference in Roanoke attended by counsel and the Special Master, the presiding federal judge announced that the plaintiffs had "substantially prevailed" and urged the parties to attempt settlement of the litigation. In a meeting of attorneys during the next month in Washington, D.C., settlement was discussed. Substantial figures were mentioned, but no settlement resulted. In November of 1976, the Special Master filed his formal report that was unfavorable to Dan River.

Four months after the report was filed, Dan River notified the insurer of the federal litigation by letter dated March 16, 1977. Approximately two months later, the insurer advised the insured, by letter of May 17, 1977, that it was denying coverage under the policies in connection with the *Adams* suit because the insured failed to give timely notice of the suit and of "alleged occurrences" upon which the suit was based.

After the present proceeding was instituted in September of 1977, the *Adams* suit was settled and the consent decree was entered in December of 1978. The decree recited that none of the provisions should be construed as an admission by Dan River that it had engaged in any unlawful conduct or constituted a finding that Dan River had engaged in any discriminatory act or practice. The decree further provided, among other things, for general injunctive relief, for payment of $50,670 as back wages, for funding of a $600,000 educational trust, and for payment of $225,000 as costs, including attorneys' fees.

In the present proceeding, the trial judge ruled that Dan River's failure to give notice at the time the *Adams* suit was filed "constitutes such a significant, substantial and material violation of the provisions of the policies so [as] to render them void and of no effect." The insured attacks that ruling and claims that the notice was timely.

The controlling language of the policies provides:

"Notice of Occurrence. When an occurrence takes place which, in the opinion of the insured, involves or may involve liability on the part of the company, prompt written notice shall be given by or on behalf of the insured to the company or any of its authorized representatives. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence. Failure to so notify the company of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder shall not prejudice such claim provided such notice is then given."

Dan River argues that after it had studied the Special Master's November 1976 report, it concluded for the first time there was potential liability to the *Adams* plaintiffs. It contends that the pertinent policy provision "clearly required notice only after Dan River reached the opinion that it might be exposed to insured damages." Emphasizing the last sentence of the notice provision and noting the law in the civil rights field still was evolving in the late 1960s, the insured says that when the *Adams* suit was filed in 1969, "Dan River did not anticipate liability for monetary damages; over seven years later liability first became apparent to Dan River and the Insurer was promptly notified." Thus, it argues, the trial court erred in finding the notice untimely. We do not agree.

The interpretation of policy language, requiring "prompt written notice" of an "occurrence" that "in the opinion of the insured" involves potential or actual liability under the insurance contract, demands an objective determination. Failure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated. Such a policy provision requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved. *See American Home Assurance Co.* v. *American Employers Insurance Co.*, 384 F.Supp. 3, 6 (E.D. Pa. 1974).

In the present case, we will assume but not decide that Dan River was under no duty to give notice prior to 1969, even though charges of racial discrimination already had been filed against the insured with the Equal Employment Opportunity Commission. Nevertheless, the obligation to notify arose within a reasonable

time after October 24, 1969, when the *Adams* suit was filed. On that date, Dan River's contractual duty of notice became clear; it should reasonably have appeared to the insured that the policy may be involved. Institution of the suit gave "rise to a claim" under the contract, in the language of the last sentence of the notice clause, because the federal complaint expressly sought monetary damages and assessment of attorneys' fees, items potentially covered under the umbrella policies. Even though, as Dan River contends, there may have been justification for the subjective opinion that only injunctive relief, not a monetary award, was the gravamen of the *Adams* suit, nonetheless Dan River as a matter of law was not justified in disregarding for over seven years an explicit demand for recovery of sums covered by the policy.

Consequently, we hold the trial court properly ruled the notice was untimely. The insured failed substantially to comply with the contract's notice requirement, a condition precedent to coverage. *See State Farm Mutual Automobile Insurance Co.* v. *Porter*, 221 Va. 592, 599, 272 S.E.2d 196, 200 (1980).

■ Alternatively, Dan River argues the insurer waived the right to rely on the untimely notice for denial of coverage because it violated the 20-day time limit set forth in Code § 38.1-389.1. As pertinent here, the statute provides:

"Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured and such insurer intends to rely on such breach in defense of liability for any claim within the terms of such policy, such insurer shall notify the claimant or the claimant's counsel of record of its intention to rely on such defense within twenty days after discovery by the insurer or any of its agents of the breach or of the claim, whichever is later . . . . Failure to serve such notice within such time will result in a waiver of such defense to the extent of such claim by operation of law."

Dan River points out that more than 20 days after its March 1977 notice, counsel for the insurer advised counsel for Dan River and counsel for the *Adams* plaintiffs, by letter stating it was "pursuant to § 38.1-389.1," that the insurer was denying coverage under the policies in connection with the *Adams* suit due to untimely notice. Dan River contends that such advice was too late and amounted

to waiver by operation of law of the right to rely on a breach of the terms and conditions of the policies. We disagree. The trial court correctly ruled that the statute is inapplicable.

As we have stated recently, the purpose of the statute in question "is to require a liability insurer that intends to rely on a breach of the terms and conditions of the policy contract, in defense of any claim under the policy, to furnish prompt notice of such intention to the claimant or his attorney so that steps may be taken by the claimant, a stranger to the insurance contract, to protect his rights." *Liberty Mutual Insurance Co.* v. *Safeco Insurance Co.*, 223 Va. 317, 325, 288 S.E.2d 469, 474 (1982); *see Maxey* v. *Doe*, 217 Va. 22, 25, 225 S.E.2d 359, 361 (1976). The statute has no effect upon the contractual relations between the insured and the insurer. *Federal Insurance Co.* v. *Nationwide Mutual Insurance Co.*, 448 F.Supp. 723, 725-26 (W.D. Va. 1978).

For these reasons, the judgment below will be

*Affirmed.*