**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 10-1684**

───────────

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

Plaintiff - Appellant,

v.

TERRENCE RAYMOND BATZLI; BATZLI WOOD & STILES, PC,

Defendants - Appellees.

───────────

**No. 10-1839**

───────────

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

Plaintiff - Appellant,

v.

TERRENCE RAYMOND BATZLI; BATZLI WOOD & STILES, PC,

Defendants - Appellees.

───────────

**No. 10-1910**

───────────

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

Plaintiff - Appellee,

v.

TERRENCE RAYMOND BATZLI; BATZLI WOOD & STILES, PC,

     Defendants - Appellants.

_____

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (3:09-cv-00432-HEH)

_____

Argued: May 12, 2011                    Decided: August 4, 2011

_____

Before KING, SHEDD, and WYNN, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Wynn wrote the majority opinion, in which Judge King joined.  Judge Shedd wrote a dissenting opinion.

_____

**ARGUED:** Danny Mark Howell, SANDS ANDERSON, PC, McLean, Virginia, for Minnesota Lawyers Mutual Insurance Company.  William F. D. Gallalee, WILLIAMS MULLEN, Richmond, Virginia, for Terrence Raymond Batzli and Batzli Wood & Stiles, PC.  **ON BRIEF:** Michael T. Marr, Jeffrey H. Geiger, Mikhael D. Charnoff, Douglas A. Winegardner, SANDS ANDERSON, PC, McLean, Virginia, for Minnesota Lawyers Mutual Insurance Company.  Harold E. Johnson, WILLIAMS MULLEN, Richmond, Virginia, for Terrence Raymond Batzli and Batzli Wood & Stiles, PC.

_____

Unpublished opinions are not binding precedent in this circuit.

2

WYNN, Circuit Judge:

When reviewing the denial of a post-verdict motion for judgment as a matter of law, we view the evidence in the light most favorable to the party that prevailed at trial and will affirm the denial of the motion "unless we conclude that the jury lacked 'a legally sufficient evidentiary basis'" to render the challenged verdict. Sloas v. CSX Transp. Inc., 616 F.3d 380, 392 (4th Cir. 2010) (quoting King v. McMillan, 594 F.3d 301, 312 (4th Cir. 2010)). In this case, the district court denied a motion for judgment as a matter of law, made by Minnesota Lawyers Mutual Insurance Company ("Minnesota Mutual"), that challenged the jury's verdict that Minnesota Mutual breached its professional liability insurance contract by refusing to defend Terrence Batzli, a lawyer, and Batzli Wood & Stiles, P.C., his law firm (collectively "the insureds"), against a malpractice suit brought by one of Batzli's former clients. Because there was sufficient evidence in the record for a reasonable jury to conclude that Minnesota Mutual breached the contract, we affirm.

I.

A.

In November 2004, Richard J. Chasen ("Richard Chasen") hired Terrence Batzli ("Batzli") of the law firm Batzli Wood &

3

Stiles, P.C., ("Batzli Wood") to represent him in his divorce from Karen Chasen. As part of that representation, Batzli engaged in property settlement negotiations with Karen Chasen's attorney, Murray Janus ("Janus").

Richard Chasen had various degrees of ownership in a number of businesses, including Chasen Properties, LLC, ("Chasen Properties"), a family business in which Richard Chasen, Karen Chasen, and their three children each owned a 20% interest. In their answers to interrogatories, both Richard and Karen Chasen indicated a belief that Karen Chasen's interest in Chasen Properties was marital property. Richard Chasen was uncomfortable with Karen Chasen's continued ownership of 20% of Chasen Properties, particularly because that entity owned the building housing N. Chasen & Son, Inc., Richard Chasen's largest business. Accordingly, Richard Chasen advised Batzli that he wanted to obtain Karen Chasen's interest in Chasen Properties during the settlement negotiations.

On October 27, 2005, Batzli sent Janus a letter with a settlement proposal. After proposing Karen Chasen's retention of certain assets such as the marital home and her current automobile, the document proposed the transfer to Richard Chasen of Karen Chasen's interests in "JACKAN, Chasen Properties, the Chasen Family Limited Partnership, and her interest in all other

4

marital assets." J.A. 487.[1] The letter also proposed that Richard Chasen would pay Karen Chasen a $345,000 lump sum in addition to a series of installment payments totaling $657,000.

In response, Janus sent Batzli a letter on December 29, 2005, stating points of agreement as well as certain counterproposals. Importantly, the letter proposed that instead of transferring her interests in the Chasen Family Limited Partnership and JACKAN to Richard Chasen, Karen Chasen would transfer those interests to the couple's children in equal percentages. Karen Chasen also rejected the proposed payment structure and suggested that Richard Chasen instead pay her a lump sum of $500,000. The letter did not mention the transfer of Karen Chasen's interest in Chasen Properties, and in its conclusion Janus wrote, "I believe this would resolve all issues between the parties." J.A. 491.

Batzli responded via letter on January 4, 2006, suggesting that Richard Chasen would buy Karen Chasen's interests in the Chasen Family Limited Partnership and JACKAN, but making no mention of Chasen Properties. Ultimately, Richard Chasen decided not to buy those interests and, on January 9, 2006, Batzli sent a letter to Janus stating, "[Richard] will agree,

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

5

with regard to Karen's interest in the Chasen Family Limited Partnership and JACKAN, that Karen's interest will simply be transferred to the children." J.A. 109. Batzli did not mention Chasen Properties in this correspondence either.

Notwithstanding, Batzli believed he had negotiated a deal under which Karen Chasen would transfer her interest in Chasen Properties to Richard Chasen. However, Batzli drafted an Agreement and Stipulation ("the Agreement") which called for the transfer of Karen Chasen's interests in JACKAN and the Chasen Family Limited Partnership to the children. Despite Batzli's intention to draft the Agreement so that Karen Chasen's interest in Chasen Properties would be transferred to Richard Chasen, he failed to do so. As drafted, the Agreement indicated that Richard Chasen would retain "[h]is interest in Chasen Properties, LLC" instead of "their interest" in the business. J.A. 119. Batzli and Richard Chasen both reviewed the document, and neither noticed the omission before Richard Chasen and Karen Chasen signed the Agreement on January 11, 2006.[2]

---

[2] Richard Chasen would later testify that when he signed the document, he believed that Karen Chasen's interest in Chasen Properties was supposed to transfer to him under the Agreement. He based this belief on the "initial instructions" given to Batzli upon his retention as counsel "as well as the previous negotiations that had gone back and forth between Mr. Batzli and Mr. Janus." J.A. 358.

6

Thereafter, Batzli sent Janus a follow-up document for Karen Chasen to sign to affect the transfer of her 20% ownership in Chasen Properties to Richard Chasen. Recognizing that the Agreement did not address Karen Chasen's interest in Chasen Properties, Janus responded that his client had not agreed to such a transfer. Nonetheless, Janus stated that Karen Chasen would be willing to transfer her interest in Chasen Properties to the couple's children as she had done, pursuant to the Agreement, with respect to her interests in JACKAN and the Chasen Family Limited Partnership. Thereafter, Batzli called Janus, who reiterated that Karen Chasen never intended to transfer her interest in Chasen Properties to Richard Chasen. Janus further asserted that Karen Chasen's interest was separate property, as it had been gifted to her individually by Richard Chasen's parents.

Having realized his drafting omission, Batzli discussed various options with Richard Chasen. Richard Chasen indicated that he was unwilling to accept Karen Chasen's offer to transfer her interest in Chasen Properties to the children. Batzli and Richard Chasen also discussed the option of moving to set aside the Agreement on the theory that there was not a meeting of the minds. Richard Chasen declined to pursue that option because he considered the Agreement favorable to him even without the

7

transfer of Karen Chasen's 20% interest in Chasen Properties.[3]  A

third option was to move for correction of the Agreement on the

grounds that Batzli had made a scrivener's error when he drafted

the Agreement.  Richard Chasen chose the third option.

On August 24, 2006, at his client's direction, Batzli filed

a motion[4] in the Circuit Court of the City of Richmond, Virginia,

seeking correction of a scrivener's error "[p]ursuant to

---

[3] Under the Agreement, Richard Chasen received all of his interest in N. Chasen & Son, Inc., the value of which had appreciated by some $2 million during the marriage.  Janus had expressed to Batzli Karen Chasen's position that the business was therefore "hybrid property" and she was entitled to a portion of the appreciation.  See Va. Code Ann. § 20-107.3(A)(3)(a) (2008) ("In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property . . . to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.").  Richard Chasen told Batzli he did not want to risk the possibility that a divorce court, identifying this increase as marital property, might give a portion to Karen Chasen.  By keeping the Agreement in effect, Richard Chasen hoped to avoid this possibility.  See id. § 20-107.3(I) ("Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties pursuant to §§ 20-109 and 20-109.1.").

[4] Batzli initially did not charge Richard Chasen for the work done in preparing, drafting, or arguing the motion; Batzli claimed that he gave Richard Chasen "courtesy discounts" for the purpose of client relations.  J.A. 289.  Later, Batzli sent a bill for a month's worth of work, asking Chasen if he would pay half the amount on the theory that the error was a "joint mistake," but Batzli ultimately accepted no money for that work either.  J.A. 292.

8

Virginia Code § 8.01-428(B)."[5]  J.A. 462.  The motion asked the court to change the Agreement to say that Richard Chasen would receive "their interest" in Chasen Properties instead of only "his interest."  Essentially, the motion asserted that Karen Chasen's silence with respect to the portion of the October 27, 2005 proposal that mentioned Chasen Properties constituted her assent to the transfer of her interest in the business to Richard Chasen.  However, the court found that there was no evidence that Karen Chasen ever agreed to transfer her 20% interest in Chasen Properties.  Moreover, the court held that Karen Chasen's silence was insufficient to indicate her agreement to the proposed transfer.  See Va. Farm Bureau Mut. Ins. Co. v. Hodges, 238 Va. 692, 695, 385 S.E.2d 612, 613 (1989) ("A binding contract is not formed until the offeree communicates an acceptance to the offeror.").  Accordingly, the court denied the motion to correct the alleged scrivener's error.

Thereafter, the Court of Appeals of Virginia affirmed the Circuit Court's denial of Richard Chasen's scrivener's error motion, stating "[t]here is no evidence in this record to

---

[5]  This statute permits a court to correct "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission . . . ."  Va. Code Ann. § 8.01-428(B) (2008).

suggest a meeting of the minds (i.e., a contract—offer and acceptance) over wife's relinquishment of her interest in Chasen Properties. As the trial court properly noted, wife's silence on this issue cannot be found to be an acceptance of husband's offer." Chasen v. Chasen, No. 0004-07-2, 2008 WL 2092260 at *4 (Va. Ct. App. May 20, 2008).[6]

B.

Months after the decision by the Court of Appeals of Virginia, Batzli Wood renewed its Professional Liability Policy, which was issued by Minnesota Mutual.[7] The renewed policy ran from October 1, 2008 to October 1, 2009. The policy provided coverage for any "act, error, or omission of the INSURED or a person for whose acts the INSURED is legally responsible"[8] that occurred "(1) during the POLICY PERIOD; or (2) prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE, if the INSURED had no knowledge of facts which could reasonably

---

[6] There were two arguments on appeal. One concerned the denial of the scrivener's error motion. The other asserted that the trial court erred in awarding Karen Chasen $10,000 per month in spousal support; the latter issue has no bearing on this appeal. Chasen, 2008 WL 2092260 at *1.

[7] Minnesota Mutual had insured Batzli Wood and Batzli against malpractice since 2005.

[8] While Batzli Wood was the "named insured," the policy made clear that Batzli was himself, as an employee acting on behalf of Batzli Wood, an "insured" as well.

10

support a CLAIM at the effective date of this policy."[9]   J.A. 563.   Under the policy, the insured was required to "give immediate written notice" to Minnesota Mutual "in the event of a CLAIM."   J.A. 568.   The policy stated that a "claim" is made whenever "an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand." J.A. 563.   Coverage under the policy was explicitly conditioned on compliance with the notice requirement.

On January 8, 2009, Richard Chasen filed a malpractice suit against Batzli and Batzli Wood in the Circuit Court of Henrico County, Virginia, based on Batzli's omission in drafting the Agreement.   After receiving a "courtesy copy" of the complaint on or about January 9, 2009, Batzli gave notice of the claim to Minnesota Mutual via letter on January 14, 2009.   Minnesota Mutual responded by denying coverage because Batzli failed to comply with the policy's notice requirement.[10]   Batzli was

---

[9]   Here, all relevant conduct related to Batzli's representation of Richard Chasen took place prior October 1, 2008 but after the prior acts retroactive date which, in the case of Batzli, was the date on which he "first entered the private practice of law."   J.A. 559.

[10]   Because both Batzli Wood and Batzli fell under the policy's definition of an "insured," the notice requirement could have been triggered by knowledge possessed by either entity.   However, there is no evidence that Batzli Wood had knowledge of any facts, other than those known to Batzli, which (Continued)

11

formally served with the Chasen complaint on June 29, 2009. Batzli again notified Minnesota Mutual of the claim, but the insurance company once again denied coverage.

On July 9, 2009, Minnesota Mutual filed an action in federal court in the Eastern District of Virginia seeking a declaratory judgment that it was not required to defend the Chasen malpractice action. Minnesota Mutual asserted that, at the latest, when Batzli filed the scrivener's error motion he was aware of facts that he knew, or should have known, would support a demand for damages. On August 5, 2009, Batzli filed an answer and counterclaim. Under the counterclaim Batzli sought a declaratory judgment that Minnesota Mutual was obligated to defend against the Chasen malpractice suit and indemnify the insured in the event of an unfavorable judgment in the malpractice case. Moreover, Batzli asserted a legal claim for breach of contract based on Minnesota Mutual's denial of coverage.

The parties filed cross-motions for summary judgment. The district court denied the cross-motions, reasoning that there was "a genuine factual dispute between the parties as to whether it was reasonable for Batzli to anticipate a claim by Mr.

_____

would be relevant to a demand for damages based on Batzli's
representation of Richard Chasen.

12

Chasen." J.A. 170. The district court granted Batzli's request for a jury trial on the breach of contract counterclaim and stated that the declaratory judgment claims would be decided after that trial.

Trial began on March 1, 2010, and a central issue was whether Batzli's notice to Minnesota Mutual was too late to comply with the policy's notice provision. Batzli argued that he complied with the notice provision by notifying Minnesota Mutual when he first received the complaint and again after receipt of formal service, so Minnesota Mutual's denial of coverage constituted a breach of contract. Minnesota Mutual argued that Batzli had sufficient knowledge to trigger the contract's notification requirement well before receipt of the complaint and Batzli's failure to notify Minnesota Mutual under those circumstances constituted a failure to satisfy a condition placed on coverage. During the trial, Minnesota Mutual made two motions for judgment as a matter of law (one after Batzli rested his case and another at the close of all evidence); the district court denied both. Ultimately, the jury found for Batzli and awarded damages of $8,400.

Thereafter, Minnesota Mutual filed a renewed motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. First, Minnesota Mutual contended that Batzli failed to present sufficient evidence to establish

13

that the attorney's fees sought were reasonable and necessary, so Batzli could not state a prima facie case for breach of contract based on actual damages. Second, Minnesota Mutual argued that Batzli's failure to plead nominal damages barred any attempt to establish a prima facie case by reliance thereon. Finally, Minnesota Mutual argued that Batzli failed to prove that he was entitled to coverage because there was insufficient evidence that the policy's notice requirement had been satisfied.

The district court agreed with Minnesota Mutual's first argument, reasoning that "Batzli's failure to provide evidence of the reasonableness of the fees, such as the nature of the services performed, the length of such services, and the applicable rates for such representation, left the jury with insufficient evidence to justify the damages awarded." Minn. Lawyers Mut. Ins. Co. v. Batzli, No. 3:09CV432-HEH, 2010 WL 2024487 at *4 (E.D. Va. May 19, 2010). Accordingly, the court set aside the award of attorney's fees. However, because Minnesota Mutual failed to convince the court that "nominal damages must be specifically plead or that a court is foreclosed from inferring such damages under the facts at hand," the court rejected Minnesota Mutual's second argument. Id. at *5. The court awarded nominal damages and deemed this sufficient to

14

satisfy the damage element of Batzli's prima facie case for breach of contract.

Next, the district court considered Minnesota Mutual's argument that Batzli's notice of a claim by Richard Chasen was untimely as a matter of law. It was uncontested that Karen Chasen would not have agreed to transfer her interest in Chasen Properties to Richard Chasen. The court opined that this fact, combined with Richard Chasen's apparent overall satisfaction with the Agreement, was enough to support the jury's conclusion that a reasonable person in Batzli's position would not have thought that his drafting omission would support a demand for damages. Additionally, the court noted that Richard Chasen never indicated an intention to sue, promptly paid attorney's fees, and maintained a positive attorney-client relationship with Batzli during the divorce proceedings. Ultimately, the court determined that there was sufficient evidence to permit a reasonable jury to find in Batzli's favor, so it denied Minnesota Mutual's Rule 50(b) motion. Minnesota Mutual appealed.[11]

---

[11] Minnesota Mutual filed its notice of appeal of the denial of its 50(b) motion on June 18, 2010. On July 12, 2010, the district court entered a Final Order declaring that Minnesota Mutual has "an obligation to provide a defense and to indemnify against all claims asserted" in the Chasen malpractice suit. J.A. 767. Minnesota Mutual filed a notice of appeal of the (Continued)

15

On appeal, Minnesota Mutual argues that the district court considered improper evidence when concluding that a jury could find in favor of Batzli on the notice issue. Minnesota Mutual also contends that Batzli failed to establish the element of damages necessary for a prima facie case of breach of contract and that the court erred when determining that nominal damages satisfied that element. Batzli filed a cross-appeal, arguing that the district court erred in reducing the damage award from $8,400 to a nominal award of $1 because there was sufficient evidence to support the jury's award of actual damages.

## II.

We review the denial of a renewed motion for judgment as a matter of law de novo. Sloas, 616 F.3d at 392. "On appeal, we view the evidence in the light most favorable to the prevailing party and will affirm the denial of a Rule 50(b) motion unless we conclude that the jury lacked 'a legally sufficient evidentiary basis' to find in that party's favor." Id. (quoting McMillan, 594 F.3d at 312). "[W]e are not permitted to retry factual findings or credibility determinations reached by the jury. Rather, we are to assume that testimony in favor of the

---

Final Order on July 21, 2010. Both of Minnesota Mutual's appeals were consolidated into the instant case.

16

non-moving party is credible, 'unless totally incredible on its face,' and ignore the substantive weight of any evidence supporting the moving party." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (quoting Duke v. Uniroyal, Inc., 928 F.2d 1413, 1419 (4th Cir. 1991)). Ultimately, "[i]f reasonable minds could differ about the verdict, we are obliged to affirm." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 113 (4th Cir. 2006).

Mindful of this deferential standard of review, we must determine whether there was sufficient evidence presented at trial to allow a reasonable jury to conclude that Minnesota Mutual breached its contract with Batzli Wood and Batzli by denying coverage. To establish a claim for breach of contract under Virginia law,[12] a plaintiff must demonstrate: "(1) 'a legal obligation of a defendant to the plaintiff,' (2) 'a violation or breach of that right or duty,' and (3) 'a consequential injury or damage to the plaintiff.'" Westminster Investing Corp. v.

---

[12] Because this case commenced in the Eastern District of Virginia, was based on diversity jurisdiction, and concerned a dispute over the coverage provided by an insurance policy issued in Virginia, we apply Virginia law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) (holding that a federal court sitting in diversity jurisdiction must apply the choice-of-law principles of the State in which the federal court is located); Buchanan v. Doe, 246 Va. 67, 70, 431 S.E.2d 289, 291 (1993) ("[T]he law of the place where an insurance contract is written and delivered controls issues as to its coverage.").

17

Lamps Unlimited, Inc., 237 Va. 543, 546, 379 S.E.2d 316, 317 (1989) (quoting Caudill v. Wise Rambler, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969)); cf. Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) ("The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.").

Here, the "obligation" in question was Minnesota Mutual's duty to defend against the malpractice suit brought by Richard Chasen. However, because the notice requirement in the policy operated as a condition to coverage, Minnesota Mutual argues that it owed no legally enforceable duty to defend.

### A. Proof of Minnesota Mutual's Breach

To address Minnesota Mutual's contention, we must determine whether a reasonable jury could have concluded that the insured satisfied the policy's notice requirement. Under the insurance contract, Batzli was required to "give immediate written notice" to Minnesota Mutual whenever "an act, error or omission by any INSURED occurr[ed] which ha[d] not resulted in a demand for DAMAGES but which an INSURED [knew] or reasonably should [have known], would support such a demand." J.A. 563 Virginia courts have consistently held that, to be entitled to coverage, an

18

insured must "substantially comply" with such notice provisions. See, e.g., <u>Craig v. Dye</u>, 259 Va. 533, 537, 526 S.E.2d 9, 12 (2000).[13]

Of course, in this case, notice was eventually supplied to Minnesota Mutual. However, under the policy, the duty to notify Minnesota Mutual arose whenever the insured did something that he knew, or reasonably should have known, would support a demand for damages. Thus, we must consider whether there was sufficient evidence in the record to support a jury determination that, prior to learning that he was a defendant in the malpractice suit, Batzli neither knew, nor reasonably should have known, that deficiencies in his representation of Richard Chasen would support a claim for damages.

Minnesota Mutual attacks the district court's conclusion that there was sufficient evidence to support the jury's

---

[13] As stated in <u>Atlas Ins. Co. v. Chapman</u>, 888 F.Supp. 742 (E.D. Va. 1995),

[t]he rationale behind the rule requiring compliance with the notice provision is compelling. Absent the requirement of prompt notice by the insured of all accidents and occurrences which could implicate the policy, the insurer is at the mercy of its insured's willingness to reveal such potential claims. As the Virginia Supreme Court has made plain, notice provisions are designed to afford the insurer the opportunity to make a timely investigation of all circumstances surrounding the accident and to prepare an adequate defense if necessary on behalf of the insured.

<u>Id.</u> at 745 (citing <u>North River Ins. Co. v. Gourdine</u>, 205 Va. 57, 62, 135 S.E.2d 120, 123 (1964)).

19

determination, arguing that the court erred as a matter of law by improperly basing its decision on evidence that had no bearing on the issue. Specifically, Minnesota Mutual asserts that the district court erred by basing its decision on 1) Richard Chasen's failure to threaten suit and/or Batzli's subjective belief that Richard Chasen would not sue him; 2) Batzli's belief that he enjoyed a good-attorney client relationship with Richard Chasen; and 3) whether a claim brought by Richard Chasen would be meritorious.

To the extent that Minnesota Mutual argues that the district court erred by relying on Richard Chasen's subjective impressions of the circumstances, Minnesota Mutual misreads the court's opinion. To begin, the district court was well aware that the test employed is an objective one, and quoted the following from Dan River, Inc. v. Commercial Union Ins. Co., 227 Va. 485, 317 S.E.2d 485 (1984):

> Failure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated. Such a policy provision requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved.

Id. at 489, 317 S.E.2d at 487. Moreover, Minnesota Mutual misinterprets the basis of the district court's decision. The court noted that the evidence established that Karen Chasen would not have agreed to transfer her interest in Chasen

20

Properties to Richard Chasen. The court stated that "[t]his uncontested fact, coupled with Chasen's apparent overall satisfaction with the other favorable terms of the property settlement Agreement, provided a legally sufficient basis for the jury to conclude that Batzli did not reasonably believe that his drafting error could support a claim for damages." Batzli, 2010 WL 2024487 at *6. In short, Minnesota Mutual is correct that a court cannot rely on an insured's subjective belief that his client will not sue, but is incorrect in asserting that subjective beliefs formed the foundation of the district court's judgment.

Minnesota Mutual also contends that the district court erred by considering the likelihood of Richard Chasen's success on the merits in the event that a claim were brought. Once again, Minnesota Mutual mischaracterizes the district court's analysis. The court did not opine that Batzli did not need to notify Minnesota Mutual because any foreseeable potential claim would lack merit; instead, it determined that there was no reasonably foreseeable potential claim. The distinction is perhaps confusing because both conclusions could potentially result from the determination that Batzli's error caused no damage to his client. See Campbell v. Bettius, 244 Va. 347, 352, 421 S.E.2d 433, 436 (1992) ("In a legal malpractice action, the fact of negligence alone is insufficient to support a

21

recovery of damages.  The client must prove that the attorney's negligence proximately caused the damages claimed.").

Like the district court, we are unconcerned with the ultimate merits of a potential claim.  However, we also conclude that a reasonable belief that an insured's error caused no harm to the insured's client is relevant to whether an objectively reasonable person in the insured's position would expect his error to give rise to a claim for damages.  See Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C., 261 Va. 38, 540 S.E.2d 491 (2001).  In Hunt & Calderone, an accountant missed a filing deadline for one of her clients and knew the error

> could potentially result in a loss of a $125,000 tax credit for the client, but she did not think that a claim would result because she was told by an administrator of the government tax credit program that sufficient funds would likely be available after all the timely applications had been processed.

Id. at 38, 540 S.E.2d at 492.  Further, when told of the error, the client said he was satisfied with the assurances made by the government administrator.  Id.  However, when funds proved unavailable, the client sued the accountant, who then sought a defense from her professional liability insurer.  The insurer denied coverage because the accountant had not notified the insurer when the initial error occurred.  The Supreme Court of Virginia ruled that, on these facts, the accountant was entitled

22

to a defense under the insurance contract.  Id. at 44, 540 S.E.2d at 494.

This case is analogous.  The evidence demonstrates that shortly after realizing his drafting error, Batzli learned of facts supporting a reasonable belief that no harm had been done to his client by the error.  To begin, a reasonable jury could conclude that no damage to Richard Chasen resulted from his payment of fees for Batzli's services.  See Rutter v. Jones, Blechman, Woltz & Kelly, P.C., 264 Va. 310, 314, 568 S.E.2d 693, 695 (2002) (stating in a malpractice suit arising from lawyer's alleged drafting error that "the fee [the client] paid the defendants for their services was not an injury resulting from legal malpractice.  It was merely the agreed-upon cost of the service, the consideration given for the contract, and not the damage or injury arising from the breach of the contract.").[14]

---

[14]  Notably, there was no evidence that Richard Chasen's payment of Batzli's legal fees was contingent on Batzli negotiating the transfer of Karen Chasen's interest in Chasen Properties.  In any event, a contingent fee arrangement would arguably have been unenforceable on public policy grounds absent extenuating circumstances.  See Smith v. Ramey, No. 8511, 1988 WL 619384 at *2 (Va. Cir. Ct. 1988) (recognizing prohibition of "contingent fee contracts in domestic relations cases except in extraordinary circumstances"); see also 7 Am. Jur. 2d *Attorneys at Law* § 260 (2007) ("A fee contract contingent on procuring a divorce, or contingent in amount on the amount of alimony, support, or property settlement to be obtained, is against public policy and void.").

More importantly, Janus told Batzli that Karen Chasen's interest in Chasen Properties was separate property that she was unwilling to transfer to Richard Chasen. Indeed, Karen Chasen testified that she would not have signed an agreement to such a transfer.[15] A reasonable jury therefore could have determined that Batzli could not have anticipated a demand for damages for failing to procure that which was unprocurable.[16]

---

[15] The following excerpt from Karen Chasen's deposition testimony, which was presented to the jury, clarifies that Karen Chasen would not have agreed to transfer her interest in Chasen Properties to Richard Chasen:

Q: . . . . Prior to signing the agreement—or at any time—did you ever agree to give your interest in Chasen Properties, LLC to [Richard] Chasen?
A: No.
. . . .
Q: If you had read this agreement and it had stated that you had transferred your interest in Chasen Properties, LLC to [Richard Chasen], would you have signed that agreement?
A: I would not have signed it.
J.A. 391.

[16] Additionally, we find no support for the contention that Batzli's error harmed Richard Chasen by causing him to pay for more than he received under the Agreement. Stated differently, there is no support for the argument that Richard Chasen might not have been willing to pay as much if he had known that he was not getting Karen Chasen's interest in Chasen Properties as part of the deal. However, the $500,000 that Richard Chasen paid was first proposed by Karen Chasen, who obviously did not consider it consideration for her transfer of her interest in Chasen Properties. Also, the jury heard evidence that "there was no document or spreadsheet that showed how the 500k [figure] was arrived at." J.A. 307. Moreover, Batzli testified that "the $500,000 was paid to get her to agree to what she ultimately agreed to." J.A. 308.

Minnesota Mutual argues that evidence of other harm would have led a reasonable lawyer in Batzli's position to notify his insurer. First, Minnesota Mutual contends that Batzli should have known that his failure to recognize the drafting error kept him from arguing during the spousal support hearing that Karen Chasen had additional income-producing separate property. However, a reasonable jury could instead have focused on Karen Chasen's testimony that she never received any money or income from her 20% interest in Chasen Properties. Minnesota Mutual also argues that Batzli should have known that his conflict of interest in pursuing the scrivener's error motion instead of seeking to have the Agreement set aside constituted actionable malpractice. But a reasonable jury could have relied on evidence showing that Richard Chasen, not Batzli, made the decision to pursue the scrivener's error motion.

In addition to evidence supporting a reasonable belief that there was no loss to the client, there was evidence, as in Hunt & Calderone, that the client was comfortable with the result, notwithstanding the professional error. The jury heard evidence that Richard Chasen rejected the idea of seeking to set aside the Agreement and renegotiate. Indeed, under the Agreement as written, Richard Chasen received the full interest in an arguably joint asset that had appreciated by $2 million during the marriage. The jury heard testimony that it was more

25

important to Richard Chasen to keep that aspect of the deal intact than to pursue Karen Chasen's interest in Chasen Properties. Further, the jury heard evidence that, notwithstanding the error, Batzli secured for his client $4 million of a $6 million estate.

Under these circumstances, viewing the evidence in the light most favorable to Batzli, as we must, we conclude that the jury had a sufficient evidentiary basis to conclude that Batzli reasonably thought his drafting error would not result in a claim until he learned from Richard Chasen that a claim would in fact be filed, at which point he promptly notified Minnesota Mutual. Likewise there was sufficient evidence to support the jury's conclusion that prior to October 1, 2008, the effective date of the policy, Batzli had no knowledge of facts that could reasonably support a demand for damages. Minnesota Mutual was therefore obligated to provide insurance coverage under the insurance contract. Because there is no dispute that Minnesota Mutual subsequently denied coverage, there was also sufficient evidence in the record to support the jury's conclusion that Minnesota Mutual breached that obligation.

## B. Proof of Damage to Batzli

Next, Minnesota Mutual maintains that there was insufficient evidence presented at trial to permit a reasonable

26

jury to conclude that the damage element of a breach of contract claim had been satisfied. Minnesota Mutual agrees with the trial court's determination that actual damages were not proven to a reasonable degree of certainty. However, Minnesota Mutual challenges the district court's determination that an award of "nominal damages" supported by the evidence at trial was sufficient to make out a prima facie case for breach of contract. We find no merit to Minnesota Mutual's argument.

It stands to reason that Minnesota Mutual's refusal to defend the malpractice suit forced Batzli to retain legal counsel. Moreover, there was evidence that the cost of those legal services was billed to Batzli. In other words, there was sufficient evidence to support a determination that there was "injury or damage to the plaintiff caused by the breach of obligation." Filak, 267 Va. at 619, 594 S.E.2d at 614. The district court awarded nominal damages for that breach. Significantly, the Virginia Supreme Court has explained that "[n]ominal damages are those recoverable where a legal right is to be vindicated against an invasion that has produced no actual present loss of any kind or where, from the nature of the case, some injury has been done the amount of which the proofs fail to show." News Leader Co. v. Kocen, 173 Va. 95, 107-08, 3 S.E.2d 385, 390 (1939) (quotation omitted); see also 22 Am. Jur. 2d *Damages* § 8 (2003) ("The term 'nominal damages' describes two

27

types of awards: (1) those damages recoverable where a legal right is to be vindicated against an invasion that has produced no actual, present loss of any kind; and (2) the very different allowance made when actual loss or injury is shown, but the plaintiff fails to prove the amount of damages.").

The district court relied on the inferred nominal damages that result from the violation of the legal rights created by the contract. Minnesota Mutual correctly argues that such damages are insufficient to satisfy the third prong of a prima facie case for breach of contract. However, neither of the cases on which Minnesota Mutual relies stands for the proposition that nominal damages can never satisfy the third element in a Virginia breach of contract claim.

In Orebaugh v. Antonious, 190 Va. 829, 58 S.E.2d 873 (1950), the court considered an action by a property owner alleging that a contractor hired to install a heating system breached his contract because the heating system failed to operate properly. Id. at 830, 58 S.E.2d at 873. However, the evidence also showed that the property owner had since sold the property with the heater still inoperable. There was no evidence of the sale price or evidence that the property owner took less for the property because of the faulty heating system. The court stated that the plaintiff did not "introduce any evidence from which it could be determined that she suffered any

loss or damage" other than the nominal damages inferred from the violation of her legal rights under the contract. Id. at 833. As such, the court held that judgment in favor of the plaintiff was in error. Id. at 834.

In Bailey v. Potter, No. 1:05c936(JCC), 2006 WL 1582410 (E.D. Va. June 5, 2006), the court considered an action brought by an employee alleging that her employer breached a contractual duty to review the employee's leave requests to ensure they were "properly coded."[17] Plaintiff alleged that the employer breached the contract by improperly coding some of her leave time as "Leave Without Pay" instead of "Office of Worker Compensation Program Leave Without Pay." Id. at *3. The court concluded that "there was no meaningful difference between" the two time codes and that, consequently, if the leave time was coded as the plaintiff desired, "Plaintiff would receive no benefit whatsoever." Id. The court then rejected the plaintiff's assertion that nominal damages inferred from the inconsequential violation of her legal rights would satisfy the third element of a breach of contract suit. Id. at *4 ("Essentially, Plaintiff seeks to eviscerate the "consequential injury or damage" element

---

[17] Although we distinguish Bailey, we also note that, as an unpublished opinion, it bears no precedential weight that would necessarily alter our analysis. United States v. Ruhe, 191 F.3d 376, 392 (4th Cir. 1999) ("[U]npublished opinions are not binding precedent in this circuit."); see also Local Rule 36(c).

29

of a claim for breach of contract, as nominal damages would always be inferred upon the allegation of a breach of a binding agreement.").

This case is distinguishable from Orebaugh and Bailey because here, "actual loss or injury is shown, but the plaintiff fails to prove the amount of damages." See 22 Am. Jur. 2d *Damages* § 8 (2003). Batzli demonstrated that he had to pay attorney's fees as a result of Minnesota Mutual's breach, but failed to prove that the amount claimed was reasonable.[18] As such, nominal damages were appropriate.[19] Both Orebaugh and Bailey involved circumstances where there was no evidence that any damage (other than the abstract damage caused by violation of legal rights created by a contract) resulted from the breach of contract. In other words, both cases held that nominal damages of the first sort discussed in Kocen cannot support a

---

[18] See *infra*, Section III.

[19] We reject Minnesota Mutual's contention that Batzli's failure to specifically plead nominal damages barred the award thereof, particularly when the counterclaim asked the court to award, in addition to the costs and fees incurred in prosecuting the counterclaim and defending the Chasen malpractice suit, "such other and further relief as the Court deems just." [J.A. 76] See Yniguez v. State, 975 F.2d 646, 647 n.1 (9th Cir. 1992)(per curiam)("Although the plaintiff's complaint does not expressly request nominal damages, it did request 'all other relief that the Court deems just and proper under the circumstances.' That is sufficient to permit the plaintiff to pursue nominal damages.").

30

breach of contract action. However, those cases provide no support for the contention that nominal damages can never satisfy the damage element of a prima facie case for breach of contract under Virginia law.

Indeed, in Crist v. Metropolitan Mortg. Fund, Inc., 231 Va. 190, 343 S.E.2d 308 (1986), the court reviewed a breach of contract action in which the trial court awarded nominal damages but denied compensatory damages. The court affirmed, stating "[b]ecause damages, if any, cannot be established with reasonable certainty, no actual damages can be recovered. Accordingly, we will affirm the judgment of the trial court denying compensatory damages but awarding nominal damages of $100." Id. at 195, 343 S.E.2d at 311. Crist therefore contradicts Minnesota Mutual's contention that a breach of contract cannot be established absent proof of actual damages, as well as the contention that nominal damages are insufficient to satisfy the damage prong of the prima facie case.

In sum, we conclude that there was sufficient evidence presented to the jury to permit its conclusion that Minnesota Mutual owed a duty to its insured and that the breach of that duty caused the insured to suffer damage. Consequently, the jury had a legally sufficient evidentiary basis to find for the insured on the breach of contract counterclaim. See Filak, 267 Va. at 619, 594 S.E.2d at 614. Accordingly, we affirm the

denial of Minnesota Mutual's renewed motion for judgment as a matter of law.

### III.  Batzli's Cross Appeal

In his cross appeal, Batzli contends that the district court erred when reducing the damage award from $8400 to $1 and argues that the evidence supported the jury's award of compensatory damages.  Batzli concedes that ruling in his favor would require our determination that he presented sufficient evidence to permit a reasonable jury to determine that the attorney's fees sought were reasonable and necessary.  See Hiss v. Friedberg, 201 Va. 572, 577, 112 S.E.2d 871, 876 (1960) ("[W]here a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit *provided they are reasonable in amount and reasonably incurred*.") (emphasis added); accord Fidelity Nat'l Title Ins. Co. of N.Y. v. S. Heritage Title Ins. Agency, 257 Va. 246, 254, 512 S.E.2d 553, 558 (1999).

Minnesota Mutual does not contest the fact that its refusal to provide coverage under the policy necessitated Batzli's independent retention of legal counsel to defend the Chasen complaint—i.e. that Batzli incurred damages.  To support the contention that the damage award was reasonable, Batzli points

32

to the malpractice complaint which he argues demonstrates the complexity and high stakes of the case, the fact that the complaint had been "pending" for a year,[20] and Batzli's testimony that he had incurred $8,400 in legal fees for the defense of the malpractice action. We conclude that such a paltry evidentiary showing was insufficient as a matter of law to support a determination that the amount awarded as damages was "reasonable."

In Chawla v. BurgerBusters, Inc., 255 Va. 616, 499 S.E.2d 829 (1998), the Supreme Court of Virginia stated:

> In determining whether a party [seeking recovery of attorney's fees] has established a *prima facie* case of reasonableness, a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

Id. at 623, 499 S.E.2d at 833. In Mullins v. Richlands Nat'l Bank, 241 Va. 447, 403 S.E.2d 334 (1991), the court said: "In determining a reasonable fee, the fact finder should consider such circumstances as the time consumed, the effort expended,

---

[20] Notwithstanding Batzli's argument to the contrary, the amount of time that had elapsed since the complaint was filed is irrelevant to our inquiry given the absence of any evidence regarding what, if any, actions were taken by Batzli's lawyers to defend against the Chasen complaint during that time.

the nature of the services rendered, and other attending circumstances. Ordinarily, expert testimony will be required to assist the fact finder." Id. at 449, 403 S.E.2d at 335.[21]

Here, there was no testimony regarding how much time Batzli's lawyers spent on the defense of the Chasen complaint, no indication of what services they performed in their representation of Batzli, and no testimony, expert or otherwise, regarding the rates charged by lawyers defending malpractice suits in Virginia. In light of Chawla and Mullins, we conclude that Batzli's argument—that $8,400 was per se reasonable in light of the amount sought in the "complex" malpractice action—is meritless. See Crist, 231 Va. at 195, 343 S.E.2d at 311. In short, Batzli had the burden of demonstrating that the attorney's fees paid to the lawyers defending the Chasen complaint were reasonable, and he failed to satisfy that burden.

This allocation of the burden of proof is also dispositive of Batzli's second argument. Batzli maintains that because

---

[21] Expert testimony is not necessarily required if lay testimony can establish the reasonableness of the fee award. For instance, when a party seeking attorney's fees submitted "almost 300 pages of contemporaneous time records detailing the activities for which fees were sought" and "affidavits of its attorneys upon the reasonableness of the hourly rates charged and the accuracy of the time billed," the court ruled that expert testimony was not necessary. Tazewell Oil Co., Inc. v. United Va. Bank, 243 Va. 94, 111-12, 413 S.E.2d 611, 620-21 (1992). No such time records or affidavits were presented in this case.

34

Minnesota Mutual did not object to the evidence entered in support of the reasonableness determination, he is foreclosed from arguing that the amount awarded was unreasonable. However, applying such a rule would relieve the plaintiff of the burden of making a prima facie case simply because his opponent was silent. We decline Batzli's invitation to so dramatically shift the burden of proof.

Ultimately, to decide the cross appeal in Batzli's favor would require the absurd conclusion that a party establishes the "reasonableness" of attorney's fees if (when viewed in the light most favorable to that party), the evidence shows that the fees were assessed in a difficult case. However, following <u>Chawla</u> and <u>Mullins</u>, we conclude that more is required to support a determination that the attorney's fees assessed were reasonable.[22] Because Batzli failed to present evidence to establish the reasonableness of the attorney's fees for which he

---

[22] As discussed above, the district court did not rely on the actual compensatory damages award of $8,400 to confirm Batzli's satisfaction of the damage element of a prima face breach of contract claim. Instead, the court imposed nominal damages. Indeed, if precisely quantifiable actual damages were the only basis for finding a breach of contract in this case, the court would have been compelled to grant Minnesota Mutual's motion. <u>See</u> <u>Bennett v. Fairfax Cnty., Va.</u>, 432 F.Supp.2d 596, 600 (E.D. Va. 2006) (stating that a court "must enter judgment as a matter of law if . . . the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture.")(quotation omitted).

was to be compensated through the jury's award of damages, the district court did not err by setting aside that damage award.

IV.

In sum, while reasonable minds may disagree regarding whether Batzli should have notified Minnesota Mutual earlier than he did, even when faced with reasonable disagreement about the propriety of the verdict, we must affirm the denial of a renewed motion for judgment as a matter of law. ABT Bldg. Prods. Corp, 472 F.3d at 113. We conclude that the jury had a sufficient evidentiary basis to support its conclusion that Minnesota Mutual breached its insurance contract by refusing to defend Batzli and Batzli Wood against the Chasen complaint. Accordingly, we affirm the district court's denial of Minnesota Mutual's motion for judgment as a matter of law. Also, because the factual determinations necessarily made by the jury in the trial as to Batzli's counterclaim are dispositive, we also affirm the grant of declaratory judgment to Batzli.

AFFIRMED

SHEDD, Circuit Judge, dissenting:

Terrence Batzli's Professional Liability Insurance Policy with Minnesota Lawyers Mutual does not cover an error made prior to the liability policy's date, "which an insured knows or reasonably should know, would support" a demand for damages. (J.A. 25.) The majority holds that there was sufficient evidence for the jury to find that Batzli lacked, or that any reasonable person in his position would have lacked, such knowledge under the facts of this case. In my view, Batzli reasonably should have known, as a matter of law, that he faced a potential demand for damages from Mr. Chasen. Therefore, with due respect, I dissent.

As the majority correctly notes, when determining whether sufficient evidence exists to support a jury verdict, "we may not substitute our judgment for that of the jury." Price v. City of Charlotte, N.C., 93 F.3d 1241, 1249 (4th Cir. 1996). However, "[w]hile we are compelled to accord the utmost respect to jury verdicts . . . [we] have a duty to reverse the jury verdict[] if the evidence cannot support it." Id. at 1249-1250 (internal citations omitted).

The evidence presented in this case cannot support the jury verdict. The record clearly establishes that Batzli knew he had committed a significant error and that his error could support a claim for damages. Batzli believed that there was an agreement

37

between Mr. and Ms. Chasen, pursuant to which Ms. Chasen would give her 20% interest in Chasen Properties, LLC to Mr. Chasen. Batzli drafted a property settlement agreement ("the Agreement") between Mr. and Ms. Chasen with the intent of ensuring Mr. Chasen would receive Ms. Chasen's 20% interest. However, Batzli admittedly made an error in drafting the Agreement and testified to this fact before the jury, stating:

> And that's where I made the error. I said "his interest." It should have said "their interest" in Chasen Properties, LLC.

(J.A. 258.) Batzli also admitted his error to Mr. Chasen in a letter and, consequently, offered to bear the costs of the action in state court to correct the error. Moreover, upon realizing his error, Batzli said that he felt sick about it and had lost sleep over it.

Finally, Batzli knew this error resulted in significant financial and personal costs for Mr. Chasen. Batzli knew Mr. Chasen believed the 20% interest was worth $440,000. In addition to the monetary value, Batzli also knew how important it was to Mr. Chasen's business that he receive Ms. Chasen's 20% interest. Without that 20% interest, Mr. Chasen stood to lose control of Chasen Properties, LLC. Mr. Chasen explicitly expressed this concern to Batzli in a letter, writing:

> [W]ith only a 20% ownership on my part, it would be easy for her and the kids to remove me as director/manager of chasen properties [sic]. If I own

38

> at least 34% . . . it is more difficult for them to remove me form [sic] that roll [sic] and Karen [Ms. Chasen] can have no part of the process. I just can not [sic] have Karen owning part of any entity that I am part of . . . much less part of my business location!

(J.A. 461.) Furthermore, in a letter to Batzli's law partner, who worked on the case with Batzli, Mr. Chasen wrote that he was "still in shock that the appeal [to correct the error] failed on all fronts," (J.A. 551) and Mr. Chasen did not respond to Batzli's request for payment of the attorneys' fees incurred in the state court action. Against this factual backdrop, Batzli should have known that his error would support a demand for damages.[*]

Despite these facts, the majority concludes there is sufficient support for the jury verdict based largely on evidence that addresses the merits of Mr. Chasen's malpractice claim. Such evidence is irrelevant as to whether a reasonable lawyer could expect a demand for damages. The liability policy requires only that the insured report an act, error, or omission

---

[*] The majority asserts that Batzli could not reasonably expect a claim for damages because Mr. Chasen had suffered no damages. To the contrary, Mr. Chasen was damaged. Mr. Chasen agreed to the settlement with the understanding that he would be receiving Ms. Chasen's 20% interest in Chasen Properties, LLC. Therefore, Mr. Chasen's damages are – at a minimum – the difference between what Mr. Chasen paid for the Agreement and what he would have paid for a settlement that did not contain Ms. Chasen's 20% interest.

39

that would support a demand for damages, not that such a demand would ultimately be successful.

The majority believes that testimony by Ms. Chasen that she would never have relinquished her 20% interest supports the jury verdict. The majority reasons that Mr. Chasen was not damaged because in a divorce action, Mr. Chasen was not legally entitled to have this non-marital asset included in a settlement. However, Ms. Chasen's testimony actually underscores the materiality of Batzli's admitted error. Because the divorce court did not have jurisdiction over and could not award Ms. Chasen's 20% interest through a court order, the only way Mr. Chasen could have received her 20% interest was through the Agreement, which Batzli failed to properly draft.

Additionally, as support for the jury verdict, the majority relies upon the fact that Mr. Chasen did not want to set aside the Agreement. This fact, as well, is irrelevant as to whether Batzli should have known if Mr. Chasen would have a claim for damages. Mr. Chasen negotiated the Agreement to receive a number of assets, including Ms. Chasen's 20% interest in Chasen Properties, LLC. The fact that Mr. Chasen wanted to keep what he actually received in the otherwise favorable Agreement is irrelevant in determining whether he was entitled to what he thought he had also received -- Ms. Chasen's 20% interest. Therefore, Batzli should have known that his error would support

40

a claim for damages despite the fact that Mr. Chasen was, overall, satisfied with the Property Settlement. See 17A Am. Jur. 2d Contracts § 708 ("As a general rule, upon the breach of a contract, the injured party may, by election, rescind and recover the value of any performance, or stand by the contract and recover damages for the breach."); Richmond v. Hall, 466 S.E.2d 103, 107 (Va. 1996) (recognizing that rescission and a suit for damages are alternate contractual remedies).

In sum, the evidence in this case clearly establishes that Batzli should have known that he made an error that would support a demand for damages and failed to report this error to the insurance company. Pursuant to the plain language of the liability policy, this claim was not covered and, therefore, the insurance company did not have a duty to defend or indemnify Batzli against Mr. Chasen's malpractice claim. For this reason, I would reverse the judgment of the district court and enter judgment in favor of Minnesota Lawyers Mutual.